IN RE GUARDIANSHIP OF ESCOLA, AN INCOMPETENT.

(Nos. CA-7002 and CA-7006—Decided June 15, 1987.)

*Black, McCuskey, Souers & Arbaugh, Terrence P. Kessler* and *John Giua,* for appellant.
*Mills, Mills, Fiely & Lucas* and *Jack Baker,* for appellee.

GEORGE, J. W. Scott Gwin, appellant herein, brings this appeal from an order of the probate court removing him as guardian of the person and estate of Mabel F. Escola, an incompetent person. Mabel has two sons, James T. Escola and Henry G. Escola.

An application for appointment of W. Scott Gwin as guardian of the person and estate of Mabel was filed in 1983. That matter proceeded to hearing, after which the trial court appointed Gwin on November 14, 1984.

A year later, Mabel's son, James, who is the appellee, filed a motion with the probate court seeking removal of Gwin as guardian of his mother and to declare the waiver of the physician-patient privilege executed by Gwin to be void. A hearing was held and the pro-

bate court sustained appellee's motion for removal, while at the same time ruling that "there is no necessity for a guardian in this matter as the trustee [bank] is ably and adequately handling the affairs of Mabel F. Escola, and, due to this ruling by the court, the movant's [appellee's] request to remove the guardian is moot." The probate court further held that the guardian's waiver of the physician-patient privilege is "illegal and invalid and the same is held for naught."

Mabel is in her late seventies and possesses an estate valued at approximately $330,000. In late 1980, Mabel created a trust whereby James would receive $3,000, certain other relatives would receive $6,500, and Henry and his wife would receive the remainder, over $320,000.

Then, in early 1982, Mabel amended her trust providing that the bulk of her estate, the remainder, would be divided equally between Henry and James. Henry filed an action in the general division of the common pleas court, claiming that Mabel was incompetent when she amended her trust and that, therefore, such amendment was void. Two days before the case was scheduled to be tried, Henry voluntarily dismissed the action. Significant to this dismissal, however, was a ruling made by the trial judge which prohibited Henry from taking the deposition of Mabel's psychiatrist. This ruling was predicated upon the ground that to permit Dr. Hector Salvucci to be deposed would be in violation of the physician-patient privilege. R.C. 2317.02(B). Without such testimony, Henry could not prove his mother's incompetence or that she had been unduly influenced.

Ten days before the action was dismissed, Gwin filed his application in probate court to be named guardian of the person and estate of Mabel. It was not until October 24, 1984, that the matter was heard. This was a contested hearing which resulted in Gwin being appointed to act as guardian for Mabel.

In January 1985, Henry filed a second action in the general division of the common pleas court which mirrored the first action. On June 17, 1985, Gwin, as guardian for Mabel, waived Mabel's physician-patient privilege which then allowed the law firm of Gutierrez, Mackey & Gwin (which represented Henry) to obtain medical information from Dr. Salvucci. When James discovered the waiver, he filed a motion in probate court for the removal of Gwin under R.C. 2109.24, which was heard and granted.

Preliminarily, James moves this court to dismiss the within appeal on the ground that the trial court's judgment is not a final appealable order. An order of the probate court in a proceeding to remove a fiduciary is reviewable under R.C. 2101.45. A guardian has standing to bring such an appeal where the judgment affects the ward adversely. *First Natl. Bank* v. *Rawson* (1936), 54 Ohio App. 285, 8 O.O. 13, 7 N.E. 2d 6.

As a result of the removal action filed by the appellee, the probate court terminated the guardianship without a determination that Mabel had been restored to competency. Mabel remains incompetent until she is so restored. Here, then, Mabel was left without the protection of any guardian and, while still incompetent, left without the probate court's continued supervision by its termination of the guardianship. As an incompetent, Mabel did not possess the legal capacity to bring or defend an action on her own behalf. Thus, she was adversely affected by the probate court's decision.

Since Mabel was adversely affected by the decision of the probate court, Gwin has standing to appeal. The motion to dismiss is denied.

Gwin raises four assignments of error. While James indicates that he, too, is raising assignments of error, he has not properly presented them to this court for review. Thus, appellee's arguments are treated as a response to Gwin's assignments of error.

Two sections of the Probate Code are important to an understanding of this appeal.

R.C. 2109.24, resignation or removal of fiduciary, provides in part:

"The court may remove any such fiduciary, after giving such fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, fraudulent conduct, *because the interest of the trust demands it,* or for any other cause authorized by law." (Emphasis added.)

R.C. 2111.47, wards other than minors, provides:

"Upon reasonable notice to the guardian, to the ward, and to the person on whose application the appointment was made, and *upon satisfactory proof that the necessity for the guardianship no longer exists* or that the letters of appointment were improperly issued, *the probate court shall order that the guardianship of an incompetent terminate* and shall make an appropriate entry upon the journal * * *. [T]he ward shall be restored to the full control of his property as before the appointment. Such entry terminating the guardianship of an insane person shall have the same effect as a determination by the court that such person is restored to sanity." (Emphasis added.)

Even a cursory examination of the two statutes reveals that the notice provisions, issues and procedures of these statutes are not similar. In a removal action, notice is required to be given ten days before the hearing and to be given to the guardian only. In a termination action, notice is required to be reasonable and to be given to the guardian, the ward, and the person who initially applied for the appointment of a guardian.

In a removal, it is discretionary with the probate court as to whether the guardian should be removed, and such removal may be based upon any just cause when the interest of the trust demands it. *In re Estate of Jarvis* (1980), 67 Ohio App. 2d 94, 21 O.O. 3d 411, 425 N.E. 2d 939. The probate court need not find that the guardian's action amounted to violations of the law or that his actions caused injury to the ward or the ward's estate. To warrant a removal, the probate court need only find that the best interests of the ward will be served by the guardian's removal. Further, the evidence presented need not be clear and convincing to justify an order of removal. *In re Estate of Bost* (1983), 10 Ohio App. 3d 147, 10 OBR 199, 460 N.E. 2d 1156.

In a termination, however, there must be satisfactory proof that the necessity for a guardianship no longer exists. The burden is placed upon the ward to show that there is no further need for the guardianship. *In re Guardianship of Breece* (1962), 173 Ohio St. 542, 20 O.O. 2d 155, 184 N.E. 2d 386. Thus, the proof must be sufficient to support the trial court's order of termination.

Another distinction between the two statutory procedures is that the action taken by the probate court provides different forms of relief. In the removal action, the disposition sought requires the probate court to order that the named guardian either be removed or not removed. In the termination action, the disposition sought is to remove the mental disability and to terminate the guardianship. The judgment in such an action serves two functions. First, it restores the ward to the full control over her person and

property. Second, it is an adjudication that the ward has been restored to sanity.

Finally, in an action to remove a guardian, the named guardian would be expected to testify. There is no necessity for the ward to participate in such an action. In a termination action, however, the ward does participate. The ward has the burden of proof and normally would be called upon to testify. One court has held that at a minimum, the probate judge should observe the ward. See *In re Guardianship of Gallagher* (1981), 2 Ohio App. 3d 218, 2 OBR 238, 441 N.E. 2d 593. This means that the ward must participate actively in a termination proceeding.

Thus, in an action originally brought as a termination action it may be modified into a removal action since the statutory notice in all probability would have been met. However, a removal action cannot be modified into a termination action because, in the latter, the notice requirements are more stringent and the standard of proof is greater.

### Assignments of Error I and II

"The probate court erred in terminating the guardianship of Mabel F. Escola upon a motion to remove the guardian made under Ohio Revised Code Section 2109.24.

"The probate court erred in terminating the guardianship of Mabel F. Escola in the absence of evidence of regained competence or procedural failures in the original adjudication of incompetence."

The court sustains both Assignments of Error I and II on the basis that the guardianship procedures for a removal, R.C. 2109.24, and for a termination, R.C. 2111.47, are different and were not followed. The order of the probate court here which purported to remove the guardian and also find that there was no necessity for a guardian, is neither an order of removal pursuant to R.C. 2109.24, nor an order of termination pursuant to R.C. 2111.47.

The probate court should first identify the statute being used, next follow the procedure outlined by the legislature and, finally, provide the appropriate relief. Thus, this matter is remanded to the trial court for further proceedings.

### Assignments of Error III and IV

"The probate court erred in ruling on the admissibility of evidence in a separate action pending in the general division of the court of common pleas.

"The probate court erred in finding that the guardian of an incompetent person has no authority to waive the privilege created by Ohio Revised Code Section 2317.02(B)."

The probate court here found that the guardian had no right to waive the privilege between Mabel F. Escola and her doctor, Dr. Salvucci. The probate court determined that the waiver was "illegal, invalid and held for naught and * * * ordered [it] stricken." The court further ordered that any "statements, transactions and notes of any kind and character" be sealed.

Gwin, as guardian, waived Mabel's physician-patient privilege. Dr. Salvucci's deposition was then taken by Gwin's brother for the purpose of challenging the amendment to Mabel's trust in Henry's action.

R.C. 2317.02 provides that communications between a patient and her doctor are privileged, but that:

"(B) * * * [T]he physician may testify by express consent of the patient or if the patient is deceased by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased patient * * *."

For the purposes of R.C. 2317.02,

the guardian of an incompetent ward may expressly consent to waive the ward's physician-patient privilege. The guardian acts in the ward's stead and for the benefit and interests of the ward. Should the waiver be necessary to protect the ward's person or property, the guardian may give it.

In *Yancy* v. *Erman* (C.P. 1951), 60 Ohio Law Abs. 301, 45 O.O. 208, 99 N.E. 2d 524, the common pleas court held in its fourth syllabus paragraph:

"In an action in which an incompetent is a party, the duly appointed guardian of his person and estate can waive a privileged communication between the incompetent and his former attorney."

The court, in its reasoning, stated: "* * * [W]ho more logically should exercise this existent right to protect the ward by authorizing his lawyer to testify than the one whom the court has specially appointed to protect the ward — his guardian!" *Yancy, supra,* at 312, 45 O.O. 2d at 214, 99 N.E. 2d at 532. The *Yancy* court further noted that the guardian should not have to apply to the court for authority to waive the attorney-client privilege. Under the same reasoning, a legal guardian may also waive a privileged communication between the ward and her physician, when such a waiver is in the best interests of the ward.

In order to properly waive the physician-patient privilege, the guardian must determine that a waiver is both necessary and beneficial to the ward's interests. The guardian should place himself in the position of the ward, consider the facts and circumstances then existing, and decide whether he would himself waive such privilege. If this is answered in the affirmative, then the guardian can properly waive the privilege for his ward.

By executing a waiver for his ward, the guardian is presumed to have waived the physician-patient privilege in good faith and for the purpose of advancing and protecting his ward's interests. The presumption that the guardian's waiver of his ward's privileged communications was for the benefit of the ward may be overcome by contrary evidence. For example, if there is evidence that (1) the guardian either did not act in good faith or was improperly motivated, (2) there was no need to disclose such confidential communications for the ward's benefit, or (3) that there was otherwise a breach of the guardianship, then the presumption must fall.

A challenge to the waiver should be made in the probate court, where the guardianship is otherwise supervised. If the waiver is found to be improper, the probate court may cancel it and order any materials gathered as a result of the waiver to be sealed. Thereafter, copies of such materials are held to be confidential and cannot be used in any other judicial proceeding, unless authorization is first given by the probate court, or by the ward when her disability has been removed.

Here, the evidence presented to the probate court concerning the waiver made by Gwin was sufficient to rebut the presumption that the waiver of the privilege was for the benefit of the ward. The waiver was given in order for Henry Escola, a beneficiary of Mabel's trust, to challenge the validity of the amendment of that trust. There is no showing that the waiver acted to benefit Mabel or her trust. As such, the waiver was improperly motivated.

Although the probate court was incorrect in holding that Gwin could not waive the privilege for his ward, the evidence presented to the court was sufficient to rebut the presumption that the waiver was given for the benefit of his ward. Thus, the court's order striking the waiver and sealing

any statements obtained as a result of the waiver is affirmed.

Assignments of Error I and II are sustained and IV is sustained in part. Assignment of Error III is overruled. The matter is reversed and the case is remanded to the probate court for further proceedings in accordance with this opinion.

### Case No. CA-7066
### Assignment of Error I

"The probate court erred in denying W. Scott Gwin's application for authority to expend funds when in fact said expenditure was necessary and proper."

Gwin applied for authority to expend funds from the ward's estate for attorney fees incurred by Gwin in his defense of the removal action. A hearing was held and the trustee of the ward's trust indicated that there was no authority to pay such attorney fees from the trust. The probate court agreed and held that the attorney fees were not a proper expenditure to be assessed against the ward's assets. The application was then denied.

In this case, the probate court had discretionary power with regard to authorizing the payment of attorney fees. Whether or not such expenses are necessary or beneficial to the ward's interests is squarely within the exercise of the court's discretion. See *In re Guardianship of Lloyd* (1964), 8 Ohio App. 2d 223, 32 O.O. 2d 128, 197 N.E. 2d 377.

Thus, the decision to authorize or not to authorize the payment of attorney fees is discretionary and, absent a showing of an abuse of that discretion by the trial court, such decision will not be disturbed by a reviewing court. No abuse having been shown, the denial of the application for the expenditure of trust assets to pay attorney fees is affirmed.

The judgment in case No. CA-7002 is reversed, and the matter is remanded for further proceedings consistent with this opinion. The judgment in case No. CA-7066 is affirmed.

*Judgment reversed and cause remanded in case No. CA-7002. Judgment affirmed in case No. CA-7066.*

MILLIGAN, P.J., and TURPIN, J., concur.

JOYCE J. GEORGE, J., of the Ninth Appellate District, sitting by assignment.