### In re ESTATE OF WINOGRAD.

[Cite as *In re Estate of Winograd* (1989), 65 Ohio App.3d 76.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 55752, 55753, 55775 and 55776.

Decided Oct. 16, 1989.

*Russell L. Davis,* for appellant and cross-appellee Patti K. Davis.

*William J. Kraus, Gary S. Okin* and *Carole A. Roth,* for appellant Kenneth W. Kates.

*Burke, Haber & Berick Co., L.P.A., Anthony J. DiVenere* and *William J. O'Neill,* for appellee and cross-appellant Society National Bank.

*Luper, Wolinetz, Sheriff & Niedenthal* and *Mark S. Miller,* for appellee and cross-appellant Phyllis Tabach.

*Goldfarb & Reznick* and *Morris M. Reznick,* for appellee guardian *ad litem* Bernard S. Goldfarb.

---

JOHN V. CORRIGAN, Presiding Judge.

This is an appeal from the Probate Court of Cuyahoga County wherein appellants/cross-appellees, Patti K. Davis and Kenneth W. Kates ("appellants"), filed an application for distribution and petition for removal of appellee/cross-appellant, Society National Bank ("SNB"), as trustee for the Belle Jacobson Winograd trust created under her last will and testament. Appellants maintained that SNB had a duty to consider them as income beneficiaries under the Winograd trust which went into effect when Winograd, the settlor, died on March 18, 1974.

The trust at issue was established for the benefit of appellee/cross-appellant, Phyllis Kates Tabach ("Tabach"), and her lineal descendants Patti Davis and Kenneth Kates. The applicable trust provision contained in the will relating to Tabach provides as follows:

"(b) During the life of my daughter, the entire net income of the trust estate set aside for her and her lineal descendants shall be paid by the Trustee to or for the benefit of any one or more to the exclusion of any one or more members of a class composed of my said daughter and her lineal descendants living from time to time, in such equal or unequal amounts and at such times as the Trustee in its sole discretion shall deem best to provide for each one's care, health, support, education and welfare considering each one's varying and individual needs, abilities, desires, circumstances and income and support from all other sources known to the Trustee. Said payments of income shall be made at quarterly or more frequent intervals as determined by the Trustee; provided, however, that all net income attributable to any calendar or other tax year shall be distributed at the latest within sixty-five (65) days following the end of such year. In addition, the Trustee shall from time to time distribute to any one or more members of said class such amount or amounts or none of the principal of the trust estate as the Trustee shall deem necessary or desirable in its sole discretion to provide for each one's care, comfort, health, support, education and welfare considering each one's varying individual needs, abilities, desires, circumstances and income and support from all sources known to the Trustee. In exercising its discretion either as to income or principal the Trustee should consider that the order of priority of my concern for the beneficiaries is firstly for my daughter and only secondarily for my daughter's lineal descendants as remaindermen."

Following the death of the settlor, there was a reading of the will for the entire family. At that time, appellants received a copy of the will.

Since SNB was the executor of the Winograd estate, plans were made to fulfill the provisions of the will. It became apparent that the estate assets were non-income producing. SNB attempted to redeem shares of stock held by the estate in order to pay administration expenses. Redemption of the shares of stock was refused by the corporation, and SNB subsequently filed suit on August 28, 1974. A second suit in relation to the estate was also filed on October 22, 1974 by Tabach.

In the first suit, both appellants were named as defendants and represented by counsel. A copy of the complaint and summons for the second suit was served on both appellants.

In both causes of action, a copy of the Winograd will was attached to pleadings served on appellants. Subsequently, on December 1, 1977, all parties entered into a settlement agreement for the resolution of both suits. Both appellants were signatories on the settlement agreement.

In 1978, SNB began distributing trust income to Tabach solely. The record reveals that SNB considered Tabach to be the primary beneficiary of the trust. At the time when the trust was open to Tabach, however, appellants were not notified by SNB of their interest in the trust. It was their belief that since both appellants were present for the reading of the Winograd will and parties to the two prior suits, they were aware of such interest. It was also explained that the customary function of SNB, as a trustee, was to wait until a request was made by a beneficiary before distributing trust income.

During 1978 to 1985, SNB received no contact from either appellant. Likewise, SNB made no attempt to inquire as to whether they desired to make a request for distribution of the trust income.

Between 1980 and 1984, SNB filed three separate partial accounts for the trust pursuant to R.C. 2109.30. The probate court set forth proper notice of the filing of the accounts and the time of the hearing on the same. R.C. 2109.32.

In November 1985, appellant, Kenneth Kates, filed a claim with the probate court requesting an order of distribution and removal of SNB as trustee. Following this request by appellant Kates, SNB contacted appellant Davis and inquired as to whether she wished to be considered for a distribution from the trust. She subsequently made a request for distribution and was awarded ten percent of the trust income. Appellant Kates' request was denied.

On April 1, 1988, appellant Kates filed an application with the probate court to vacate the order settling the trustees' first, second, third and fourth partial accounts. A trial of this matter was held before a referee.

The referee heard all the evidence and filed his recommendation to be reviewed by a judge of the probate court. The referee found that SNB had breached its fiduciary duty and abused its discretion by failing to inquire into the financial circumstances of all beneficiaries of the trust prior to their distribution of income to Tabach during 1978 to 1985. However, it was also determined that both appellants had ratified the actions of the trustee thereby estopping them from asserting any claims against SNB. Included in the referee's recommendations was an award of attorney fees to SNB in the amount of $15,000.

The trial judge reviewed the record and recommendation of the referee. A hearing was held and the referee's recommendation was adopted by the court. However, the court determined that all parties should be responsible for their own costs incurred and allowed $15,000 in attorney fees only to counsel of the guardian *ad litem.*

■ Appellants jointly present eleven assignments of error for review by this court. In large part, both parties challenge the probate court's adoption of the referee's report as against the manifest weight of the evidence and contrary to law. It is also contended that the court erred in not awarding reasonable attorney fees to appellants.

Upon review of the record, we find that appellants' arguments are without merit. Thus, we affirm the decision of the probate court.

An examination of the language of the trust at issue reveals that the settlor intended to have Tabach provided for primarily by way of net income from the trust. However, the fiduciary's distribution of income from the trust was also to reflect consideration of the individual needs of all the beneficiaries.

It was the trial court's decision that by not ascertaining the needs of appellants Davis and Kates the fiduciary had abused its discretion. This abuse, however, was offset by the fact that both appellants had seen the will of the settlor and had notice of their interest in the trust. Further, there had never been any objection made over the distribution of the trust income until 1985, which was eight years after the opening of the active trust account. Thus, it was found that appellants Davis' and Kates' inaction for so many years acted as a ratification of SNB's conduct and thereby estopped them from complaining at this juncture. Cf. *Cleveland Trust Co. v. Eaton* (1967), 11 Ohio Misc. 151, 172, 40 O.O.2d 460, 472–473, 229 N.E.2d 850, 864–865.

■ Admittedly, the trust language invested SNB with wide discretion in managing and distributing the trust assets. However, the trust's grant of broad administrative authority did not alter SNB's continuing duty to act reasonably and in the best interests of the trust's beneficiaries. *Black v. Cleveland Trust Co.* (Feb. 12, 1981), Cuyahoga App. No. 42033, unreported, 1981 WL 10206.

While we accept the fact that SNB should have taken into consideration the financial needs of both appellants Davis and Kates, the failure to do so did not result in harm to them. When their financial needs were looked into in 1985, it was determined that it would have been imprudent to allow Kates to receive trust income. Davis, on the other hand, was awarded ten percent of the trust income.

The decision of the referee as adopted by the trial court was supported by the evidence submitted by all parties. We find no reason to reverse that decision.

■ Additionally, appellants Kates and Davis maintain that it was error not to remove SNB as trustee of the settlor's estate. This argument has no merit.

R.C. 2109.24 authorizes the trial court to remove a fiduciary when "the interest of the trust demands it." The removal of a fiduciary pursuant to this statute is within the sound discretion of the trial court. *In re Estate of Jarvis* (1980), 67 Ohio App.2d 94, 21 O.O.3d 411, 425 N.E.2d 939, syllabus. "The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property." *In re Estate of Bost* (1983), 10 Ohio App.3d 147, 149, 10 OBR 199, 201, 460 N.E.2d 1156, 1159.

There was no evidence that SNB acted in bad faith or recklessly by distributing the trust income to Tabach. Although it is clear that the better action would have been to include the needs of appellants Kates and Davis in its determination of distribution, that action does not warrant the removal of SNB as trustee.

The record indicates that SNB made a good faith effort to act under what it believed was the purpose of the trust. While SNB could have acted more wisely, its handling of the trust income did not amount to a total abuse of its discretion as trustee. See *Caswell v. Lenihan* (1955), 163 Ohio St. 331, 338, 56 O.O. 309, 311–312, 126 N.E.2d 902, 905–906.

Therefore, the trial court did not err in adopting the recommendations of the referee. We affirm the decision of the trial court.

■ There is also no need to contravene the determination that appellants Kates, Davis and Tabach were not entitled to receive attorney fees. Since it

was found that no prejudice resulted to them from the actions of SNB in distributing the trust income, attorney fees would have been inappropriate.

The trial court maintained that appellants Davis and Kates were in large part responsible for the outcome since they had remained silent for so many years even knowing that Tabach was receiving all the income from the trust. Additionally, Tabach's retention of separate counsel for this action was somewhat groundless since her interests were represented by counsel for the estate of the settlor.

■ The determination of whether the award of attorney fees is appropriate is discretionary with the probate court. See *In re Guardianship of Lloyd* (1964), 8 Ohio App.2d 223, 32 O.O.2d 128, 197 N.E.2d 377. That court did not abuse its discretion in denying attorney fees to Kates, Davis and Tabach. See *In re Guardianship of Escola* (1987), 41 Ohio App.3d 42, 47, 534 N.E.2d 866, 872.

We find no merit to the assignments of error presented by appellants Davis and Kates. Likewise, we maintain the same posture as to cross-appellant Tabach's argument that she was entitled to such fees as well. As such, we sustain the decision of the probate court.

■ On cross-appeal, SNB argues that the trial court erred in finding that it had abused its discretion by failing to ascertain the needs of appellants Davis and Kates prior to distribution of trust assets, and that they should have been reimbursed for attorney fees. These contentions have no merit.

First, it must be pointed out that the referee awarded SNB attorney fees in its recommendation to the trial court. Upon review of the hearing held before the referee, the trial court agreed that SNB had abused its discretion in not considering Davis' and Kates' needs prior to allocation of the trust money. However, the trial court found that because of that fact, it was not entitled to receive attorney fees.

In our opinion, there was no abuse of discretion displayed by the trial court's refusal to award attorney fees to SNB. Even though SNB's actions in not specifically calling on Davis and Kates to provide them with financial data from 1978 through 1985 did not result in harm to those beneficiaries, the language of the trust required that it do so.

In that sense, SNB did abuse its powers of discretion and the trial court was not in error by finding that that was the case. While it is well settled that a trustee is entitled to reasonable compensation for services rendered in that capacity, it was not an abuse of discretion in this case to deny said fees to SNB. See *In re Guardianship of Escola, supra; In re Will of Allison*

(1965), 9 Ohio App.2d 333, 38 O.O.2d 388, 224 N.E.2d 386; *In re Estate of Gray* (1963), 118 Ohio App. 547, 26 O.O.2d 65, 196 N.E.2d 131.

As such, the decision of the trial court is affirmed.

*Judgment affirmed.*

MARTIN, J., concurs.

HOFSTETTER, J., dissents.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.

WILLIAM J. MARTIN, J., of the Court of Common Pleas of Carroll County, sitting by assignment.

EDWIN T. HOFSTETTER, Judge, dissenting.

I strongly dissent from the majority opinion. Foremost, in support of my dissent, is the need for the maintenance of the integrity of the fiduciary functions as set forth in the Ohio Revised Code and as anticipated by all who rely on the qualifications of the person or institution named as fiduciary in their wills. The fiduciary, after all, is the alter ego of the deceased, after death, whose function is to carry out the testator's or settlor's intent in the will or trust instrument.

It is my firm belief that a fiduciary, no matter how well informed or intentioned, when confronted with conflicting trust provisions contained in the will, has a duty not only to the settlor, but to the beneficiaries of the trust as well to apply to the court for a judicial determination of the meaning of the terms of the trust. Until that determination is made by the court, the discretion to be exercised by the trustee is without foundation. The appropriate duties and proper functions of the trustee cannot be bottomed on conflicting language simply because it purportedly carried out what it believed was the purpose of the trust.

I find it difficult to reconcile the majority opinion with its citations. At one point, it said:

"Admittedly, the trust language invested SNB with wide discretion in managing and distributing the trust assets. However, the trust's grant of broad administrative authority did not alter SNB's continuing duty to act reasonably and in the best interests of the trust's beneficiaries. *Black v. Cleveland Trust Co.* (Feb. 12, 1981), Cuyahoga App. No. 42033, unreported, 1981 WL 10206."

A few paragraphs later, it said:

"R.C. 2109.24 authorizes the trial court to remove a fiduciary when 'the interest of the trust demands it.' The removal of a fiduciary pursuant to this statute is within the sound discretion of the trial court. *In re Estate of Jarvis* (1980), 67 Ohio App.2d 94, 21 O.O.3d 411, 425 N.E.2d 939, syllabus. 'The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property.' *In re Estate of Bost* (1983), 10 Ohio App.3d 147, 149, 10 OBR 199, 201, 460 N.E.2d 1156, 1159.

"There was no evidence that SNB acted in bad faith or recklessly by distributing the trust income to Tabach. Although it is clear that the better action would have been to include the needs of appellants Kates and Davis in its determination of distribution, that action does not warrant the removal of SNB as trustee.

"The record indicates that SNB made a good faith effort to act under what it believed was the purpose of the trust. While SNB could have acted more wisely, its handling of the trust income did not amount to a total abuse of its discretion as trustee. See *Caswell v. Lenihan* (1955), 163 Ohio St. 331, 338, 56 O.O. 309, 311–312, 126 N.E.2d 902, 905–906."

Two of the supportive citations above, interestingly enough, were *affirmances* by this court of lower court proceedings where the fiduciaries were removed because the best interest of the estate required it.

To the extent the fiduciary function of appellee Society National Bank clearly is within its understanding and knowledge as a trustee, the blame for its failures cannot and should not be passed on to the appellants herein. Simply because each had seen the will of the settlor, and had never made any objection to the distribution of the trust until 1985, does not constitute ratification of SNB's conduct so as to estop them from complaining when they did.

Understandably, the issue here is whether the trial court abused its discretion in the orders on appeal. Within the reasoning set forth herein, I would so hold and would reverse and remand for further proceedings.