O P I N I O N
This appeal emanates from a judgment of the Ashtabula County Court of Common Pleas dated February 16, 2000.
The case was initiated when appellees, James and Aline C. Poythress ("Aline"), filed a complaint on April 14, 1998, against appellants, Floyd J. Clark ("Floyd") and Louise B. Clark ("Louise"), seeking a partition of real estate which was jointly owned by appellant Floyd and his sister, appellee Aline. Appellants filed a counterclaim on October 19, 1998, requesting the removal of Aline as trustee of a trust executed by their mother, in part for the benefit of Floyd. The counterclaim asserted that Aline breached her fiduciary duty to Floyd, that she exercised undue influence over their mother, Laurella Clark ("Laurella"), in creating the trust, and that her conduct constituted fraud.
Several pretrial hearings were conducted. Further, appellants filed a motion for partial summary judgment on July 1, 1999. On August 20, 1999, appellees filed their memorandum in opposition to appellants' motion for summary judgment. On December 20, 1999, the trial court overruled appellants' motion for partial summary judgment. A bench trial was held on December 21 and 22, 1999.
The evidence revealed that Laurella conveyed a parcel of real estate to Floyd and Aline as joint tenants in September of 1993. Laurella then created an inter vivos living trust which provided that, upon her death, the trustee would divide the trust equally between co-beneficiaries Floyd and Aline. Aline's share was to be distributed outright, but Floyd's share was to be held in a spendthrift trust with Aline named as trustee. Laurella was ninety-six years old at the time of her death in 1996.
During the trial, Aline took the stand and related that she was not present when her mother prepared the trust. However, she recalled that on September 16, 1994, the day Laurella finalized the trust, she went over the trust with Laurella's attorney. She explained that "that was the first time [she saw] it and the last time [she] saw it until [she] became trustee." She further averred that she abided by the terms of the trust by providing Floyd with regular income tax information concerning his trust. Basically, she provided him with "everything that's going on" with regard to his trust. Furthermore, Aline explained that she and Floyd's wife, Louise, "have a relationship that's very strained, and [she] really prefer[s] not to be around [Louise] * * *."
One of the employees of the law firm that drafted Laurella'a will and trust documents testified that Aline was very critical of Louise because she felt that Louise was "incapable of handling finances." According to this witness, although Aline demonstrated anger toward Louise, she showed concern for her brother.
Several witnesses who testified for both appellees and appellants described Laurella as a competent woman up to the time of her death. Laurella's minister stated that she was "sharp as a tack" during the last two years of her life. Laurella'a first cousin also took the stand and related that Laurella was pretty sharp the last couple years of her life.
Floyd took the stand and stated that he has "strongly felt that [his] mother was under some kind of influence by [Aline] due to Aline being in the hospital and hatred feelings toward [his] wife." Yet, he admitted that his mother never told him that Aline was trying to change the trust.
Thereafter, Mrs. Hatmaker took the stand. She stated that her husband was Laurella's handyman, and she visited Laurella on a weekly basis for almost fifteen years. She testified that Laurella "was very alert, very in touch with what was going on in the world, politics and such * * *." She claimed that Laurella was a sharp individual and that she "had a mind of her own and she used it." Furthermore, she opined that no one could sway Laurella.
Maxine, Laurella's neighbor, proceeded to take the stand and related that she saw Laurella almost everyday. Maxine described Laurella as a sharp and strong willed individual that could not be unduly influenced by anyone.
Charles, Laurella's stepson, characterized her as an intelligent woman, who was very coherent up until the time she died. He stated that she knew exactly what she was doing. When Charles was asked whether he thought Laurella could be easily influenced by Aline or Floyd, his response was "[h]ell, no * * *."
In a judgment entry dated December 28, 1999, the trial court dismissed the partition action since the parties had reached a settlement by way of a contract to sell and equally divide the net proceeds from the sale of the real estate. In another entry dated February 16, 2000, the trial judge "dismissed" appellants' counterclaim and awarded judgment to appellees.[1] The trial court ordered that Aline pay Floyd $1,500, as one-half of the value of the fixtures and appliances Aline removed from their mother's house at the time of her death. The trial court also granted appellees their attorney fees from the proceeds of the trust.
Appellant timely filed the instant appeal and now asserts the following as error:
 "[1.] The trial court erred in holding that [appellants] failed to prove by clear and convincing evidence that Laurella Clark was unduly influenced by [appellee Aline], in establishing the trust in question in this matter.
 "[2.] The trial court erred in holding that [appellants] did not prove by clear and convincing evidence that [Aline] breached her duties as trustee and should therefore be removed as the trustee in this matter. Additionally, the court erred in holding that [appellants] did not prove by clear and convincing evidence that the animosity has led to a failure to cooperate by the trustee.
 "[3.] The trial court erred in not requiring [Aline] to reimburse the attorney fees incurred to the trust."
 As appellants' first and second assignments of error are interrelated, they will be addressed in a consolidated manner. In these two assignments of error, appellants contend that the trial court erred in holding that appellants did not demonstrate by clear and convincing evidence that Aline unduly influenced Laurella in regard to the creation of the trust and that Aline breached her duties as trustee and failed to cooperate. Specifically, both assignments of error seem to make a manifest weight of the evidence argument.
An appellate court will not reverse the judgment of the trial court if the decision is supported by competent credible evidence going to all of the essential elements of the case. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 280. In addition, we are guided by the presumption that the findings of the trial court are correct, and that the trial judge is in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and to use such observations in weighing the credibility of the witnesses' testimony. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80.
The elements of undue influence are as follows: (1) a susceptible party; (2) another's opportunity to exert influence; (3) improper influence exerted or attempted; and (4) the result showing the effect of such improper influence. Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,65. Additionally, "the phrase `undue influence' suggests a two-step inquiry. First, it must be ascertained whether the transaction was the result of influence brought to bear upon the susceptible party. Second, it must be determined whether that influence was actually `undue.'" Lahv. Rogers (Dec. 31, 1997), Lake App. No. 96-L-071, unreported, at 4, 1997 WL 817838. However, not every exercise of influence will void a transaction. Krischbaum at 68.
Here, appellants had to show by clear and convincing evidence that Aline exerted improper influence over Laurella. Clear and convincing evidence is that measure or degree of proof which will produce, in the mind of the trier of fact, a firm belief or conviction as to the facts sought to be established. Lauerman v. Destocki (1993), 87 Ohio App.3d 657,667.
In the instant matter, the evidence revealed that Aline took Laurella to the attorney's office so Laurella could finalize the trust. It was on that day that Aline discussed the trust with her mother's attorney. However, she stated that she was not present when her mother prepared the trust. Furthermore, several witnesses described Laurella as a very sharp woman who was competent until the time of her death. A couple of witnesses, including Laurella's stepson, testified that Laurella could not be influenced by anyone.
Upon reviewing the evidence adduced at trial, we conclude that appellants did not meet their burden. The trial court correctly determined that appellants failed to prove undue influence by clear and convincing evidence. The evidence presented at trial did not establish that Laurella was a susceptible party; that even though Aline had the ability to contact Laurella, the facts did not prove she used the opportunity to exert influence over Laurella; that Aline attempted to influence Laurella improperly; and the result showing the effect of such improper influence.
Moreover, appellants allege that Aline breached her fiduciary duty as trustee. R.C. 2109.24 provides:
 "The court may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law. * * *"
 In the case sub judice, appellants must demonstrate by clear and convincing evidence that Aline breached her duties a trustee. Here, Aline did admit that her relationship with her sister-in-law, Louise, was strained. However, there was no evidence offered to establish that she had any hostility toward Floyd. Further, even though the evidence may have showed that Aline displayed animosity toward Louise, there was no evidence presented to prove that this ill will affected her duties as trustee with regard to Floyd's trust. In fact, Aline testified that she had abided by the terms of the trust and provided Floyd with regular information concerning his trust. Appellants did not provide clear and convincing evidence that Aline breached her fiduciary duty as trustee. Therefore, it is our view that although there is conflicting evidence on some of the issues argued by the parties, there remained an adequate base of credible and competent evidence to support the conclusion of the trial court. As a result, appellants' first and second assignments of error are not well-founded.
In their third assignment of error, appellants argue that the trial court by not requiring Aline to reimburse the attorney fees incurred to the trust.
The decision to authorize the payment of attorney fees is discretionary and, absent a showing of an abuse of discretion by the trial court, such decision will not be disturbed by an appellate court. In re Guardianshipof Escola (1987), 41 Ohio App.3d 42, 47. Here, since Aline did not breach her duties as trustee of the trust, we conclude that there has been no abuse by the trial court. Appellant's third assignment of error lacks merit.
For the forgoing reasons, appellants' assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
 _____________________________________ JUDGE DONALD R. FORD
O'NEILL, P.J., CHRISTLEY, J. concur.
[1] In essence, we translate the trial court's "dismissal" of thecounterclaim to be a judgment in favor of appellees on appellants'counterclaim regarding the claims of undue influence and breach offiduciary duty.