[Cite as *In re Special Needs Trust of Moskowitz*, 2013-Ohio-1282.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF SPECIAL NEEDS TRUST OF PERRY MOSKOWITZ | : | **O P I N I O N** |
| | : | |
| | | **CASE NOS. 2011-L-164** |
| | : | **and 2011-L-165** |

Civil Appeals from the Lake County Court of Common Pleas, Probate Division, Case Nos. 11 TR 0015 and 27 GU 111.

Judgment: Affirmed.

*Thomas J. Sacerich*, Sacerich, O'Leary & Field, 8302 Yellowbrick Road, Mentor, OH 44060-4960 (For Appellant, Deborah Moskowitz).

*Lori Kilpeck*, *Stephen M. Bales*, and *Douglas M. Eppler*, Ziegler Metzger, LLP, 925 Euclid Avenue, Suite 2020, Cleveland, OH 44115-1441 (For Appellees, Maureen Kelly Byron and First Merit Bank, N.A.).

THOMAS R. WRIGHT, J.

{¶1} The instant appeal is from a final judgment of the Probate Division of the Lake County Court of Common Pleas. Appellant, Deborah Moskowitz, seeks reversal of the trial court's decision to adopt the recommendation of a court magistrate regarding the merits of her motion for reimbursement of payments she made as a guardian over a six-year period. Essentially, appellant asserts that the magistrate and trial court erred in rejecting her testimony as to whether the disputed payments were made from her own

personal funds.

{¶2} Appellant and Perry Moskowitz have been married for over 20 years and have two children. During the majority of their marriage, the couple resided in Lake County in their own home, and Perry was able to maintain employment and otherwise provide for the family. However, in 2002, Perry was diagnosed with numerous physical and mental afflictions, including severe depression. As a result of his illnesses, he was no longer able to work, and ultimately had to be placed in a local nursing home.

{¶3} In light of her husband's difficulties, appellant filed an application with the trial court for the creation of a guardianship over Perry's person and estate. In August 2002, the trial court granted the application, and appellant herself was duly appointed as Perry's guardian.

{¶4} Over the next five years, Perry's condition never improved to the point that he was able to leave the nursing home and resume his previous life. Consequently, the guardianship has remained in effect. During that particular time frame, appellant filed with the trial court four separate partial accountings of the various expenditures she had made under the guardianship. In each of these partial accountings, she indicated that she had "advanced" certain funds to the guardianship which were used for Perry's care. Although appellant was required to amend at least three of the partial accountings, the trial court eventually approved all four accountings, expressly finding that each was "just and correct and in conformity to law * * *."

{¶5} In October 2004, appellant moved the trial court to order the transfer of the majority of Perry's remaining assets to her. As the grounds for the motion, she argued that: (1) she needed the assets to properly provide for herself and the two children; and

2

(2) the Lake County Department of Job and Family Services had determined that a total of $162,231.97 must be transferred from Perry to her, as his spouse, in order for him to qualify for full coverage under Medicaid. Upon due consideration, the trial court granted the motion and ordered that all of Perry's remaining assets, except for the basic sum of $1,500, be transferred to appellant.

{¶6} After the transfer of the assets had been completed, it was necessary for appellant to make considerable tax payments covering the 2005 fiscal year to the State of Ohio and the federal government. In addition, she used certain funds to assist her oldest child in attending college and to pay off both mortgages on the marital residence. During this same general period, she also made three payments directly to the nursing home in which Perry was living. These payments, which totaled approximately $26,000, were intended to liquidate an outstanding debt for Perry's care at the facility. Once the debt was entirely paid, appellant would be entitled to a greater percentage of Perry's monthly Medicaid check for support of herself and her one minor child.

{¶7} After appellant had served as Perry's sole guardian for nearly five years, he made a request to the trial court to have her removed from the position. The matter was referred to a court magistrate for disposition. Upon holding an evidentiary hearing in December 2007, the magistrate issued a decision in which it was recommended that appellant be removed as guardian. In support of her decision, the magistrate concluded that: (1) appellant had developed a contentious relationship with the staff of the nursing home, and appeared to be more concerned with protecting herself from liability than caring for Perry; and (2) appellant had been co-mingling her personal assets with the assets of the guardianship.

3

{¶8}  Without benefit of counsel, appellant submitted objections to the foregoing magistrate's decision.  Upon reviewing the objections, the trial court overruled them and adopted the magistrate's recommendation.  As a result, the court ordered the removal of appellant as guardian of Perry's person and estate.  No appeal was ever taken from this particular judgment.

{¶9}  Approximately two years after the appointment of Maureen Kelly Byron as the new guardian, she moved the trial court for the authority to establish a special needs trust for Perry's benefit.  As the basis for the motion, Ms. Kelly asserted that, in light of the recent death of Perry's mother, he was now entitled to receive the sum of $171,698 from her estate.  Ms. Kelly maintained that it was necessary to place the inheritance in a trust so that he could continue to qualify for Medicaid assistance.

{¶10}  Despite the fact that appellant was no longer the guardian, she attended the hearing which the trial court conducted on the trust motion.  At the conclusion of that proceeding, the trial court invited Ms. Kelly and appellant to submit additional briefing on the need for the trust.  When appellant did not file such a brief, the trial court reviewed Ms. Kelly's new brief and granted her motion for the establishment of the special needs trust.  However, approximately five months after the creation of the trust, appellant filed a motion to stay any disbursement of the inheritance to Perry.

{¶11}  In conjunction with the motion to stay, appellant moved the trial court to be reimbursed for certain expenses she had paid on Perry's behalf while she was guardian of his estate and person.  Specifically, she asserted that she was entitled to be paid for: (1) the funds she had "advanced" to the guardianship during its first four years; (2) the direct payments she had made to the nursing home for Perry's care; (3) the insurance

4

premiums and property taxes she had paid on the marital residence; (4) the mortgage payments on the marital residence; and (5) the excessive tax payments made in 2005 after Perry's remaining assets were transferred to her. In essence, appellant contended that she should be awarded all of the inheritance funds because the total amount of the foregoing expenses exceeded $200,000.

{¶12} The motion to reimburse was assigned to the same magistrate who heard the request to remove appellant as guardian. In June 2011, the magistrate conducted an abbreviated evidentiary hearing, in which appellant was the sole witness to testify. As part of that testimony, she expressly stated that each of the disputed payments had been made from her own personal funds, not funds of the guardianship. In relation to the payments made after July 2005, appellant admitted that some of the payments were made from the funds she received from the transfer of Perry's remaining assets, but that she considered those specific funds as belonging solely to her. Besides her testimony, appellant submitted one exhibit, which consisted of her written summary of the disputed payments and copies of various documents.

{¶13} In her written decision on the motion to reimburse, the magistrate primarily concluded that appellant was not entitled to be compensated because her evidence was insufficient to demonstrate that the disputed payments had been made with funds from her own personal accounts. In support of the conclusion, the magistrate noted that she had failed to provide any definitive testimony concerning the extent of her employment during the relevant period. The magistrate further noted that the distinction between the assets of the guardianship and appellant's assets was unclear, and that one reason why appellant had been removed as guardian was her co-mingling of the assets. Therefore,

5

the magistrate recommended that the funds from the inheritance remain in the trust.

{¶14} As part of her objections to the magistrate's decision, appellant challenged the rejection of her specific testimony regarding the source of the funds for the disputed payments. In overruling her objections in its final judgment, the trial court held that the rejection of her testimony was warranted because her sole exhibit did not provide any verification that the funds in question had come from her own personal assets. In addition, like the magistrate, the trial court emphasized that appellant's removal as guardian had been based in part upon her co-mingling of her own personal assets with the assets of the guardianship. In light of this, the court adopted the magistrate's decision and denied appellant's motion for reimbursement from the inheritance funds.

{¶15} In appealing the foregoing judgment to this court, appellant has asserted four assignments of error for review:

{¶16} "[1.] It is an error for the Court to adopt the Magistrate's decision to not reimburse [appellant] on the moneys paid to Madison Health Care on behalf of the Ward.

{¶17} "[2.] It is an error for the Court to find that Exhibit 1 was not supported by evidence that [appellant] advanced her own, individual assets.

{¶18} "[3.] It is an error for the Court to fail to award [appellant] the funds she advanced to the Guardianship for the care of the Ward.

{¶19} "[4.] It is an error for the Court to adopt the Magistrate's decision to not reimburse [appellant] for the payment of the Ward's bills and charging her with 100% of the parties' tax liability."

{¶20} Since appellant's first three assignments raise similar points, they will be

addressed together. Essentially, she challenges the merits of the magistrate's finding on the central issue of whether she used her own funds in either paying debts directly for Perry or advancing money to the guardianship. First, appellant maintains that, as a matter of law, the magistrate erred in holding that the funds she derived from the 2005 transfer of Perry's remaining assets did not belong solely to her. Second, in relation to her monetary advances to the guardianship from 2002 through 2005, she submits that the magistrate should have found that the trial court's approval of her four accountings constituted judicial acknowledgement of the fact that the funds at issue had come from her own account.

{¶21} Regarding appellant's first argument, this court would initially note that the majority of the payments for which she sought reimbursement were taken directly from the funds she obtained through the 2005 transfer of Perry's remaining assets. A review of the transcript of June 2011 evidentiary hearing readily confirms that, in testifying on her own behalf, appellant stated that she used the "transfer" funds to liquidate the two mortgages on the marital residence, make two payments on a debt to the nursing home, and pay certain tax liabilities to the state and federal governments. In concluding that appellant was not entitled to be reimbursed for her use of any of the "transfer" funds, the magistrate emphasized that, even though the trial court had approved the transfer of the assets to her, there was no indication in the record that she had exclusive control over the use of the resulting funds.

{¶22} Upon reviewing the relevant federal and state law, this court holds that the trial magistrate's finding as to the extent of appellant's control over the "transfer" funds was technically incorrect. In order for a Medicaid applicant to be entitled to benefits, it

7

must be shown that the applicant does not have any ability to obtain access to funds in an amount greater than $1,500. *See Martin v. Ohio Dept. of Human Services*, 122 Ohio App.3d 679, 682 (2d Dist.1997). Hence, in the instant matter, Perry could only qualify for Medicaid if his ownership or control over the disputed assets had been completely extinguished. To this extent, appellant was given total control over those assets when they were transferred to her; i.e., she became the sole owner of the resulting funds.

{¶23} Nevertheless, the mere fact that the "transfer" funds belonged to appellant is not dispositive of the issue of whether she was entitled to reimbursement. As previously mentioned, as a distinct basis for her finding that appellant had not carried her burden of proving that the disputed payments had been made from her own personal funds, the magistrate referred to the fact that appellant had earlier been found to have co-mingled her own assets with those of the guardianship. Furthermore, in upholding the denial of the motion for reimbursement, the trial court also expressly referenced the prior finding of co-mingling.

{¶24} Our review of the trial record verifies that, in deciding that appellant should be removed as guardian in January 2008, the magistrate specifically found that appellant had failed to keep her own assets completely separate from those of the guardianship. The trial record further shows that the trial court adopted the magistrate's decision regarding the "removal" issue in all respects. Moreover, this court would note that the co-mingling finding was made after the 2005 transfer of Perry's remaining assets. Finally, there is no dispute that appellant never pursued an appeal of the "removal" determination.

{¶25} A probate court's judgment ordering the removal of a guardian is viewed

8

as a final order which is subject to immediate appeal. *In re: Guardianship of Escola*, 41 Ohio App.3d 42, 43 (5th Dist.1987). Therefore, by failing to pursue a direct appeal of the final removal judgment, appellant allowed the magistrate's co-mingling finding to become the "law" of the underlying case. *In re Swingle*, 5th Dist. No. CT08-0060, 2009-Ohio-1194, ¶13. In other words, by not appealing in a timely manner, appellant waived the ability to contest the co-mingling finding for purposes of any subsequent proceedings in the underlying guardianship case.

{¶26} Given the prior finding of co-mingling, whenever appellant made any of the disputed payments, she could not establish that she was employing her own funds rather than funds that already belonged to the guardianship. Obviously, if appellant was using guardianship funds, she would not be entitled any reimbursement. This logic would not only apply to any payments made from the funds derived from the transferred assets, but also to any of the four alleged advances which she deposited into the guardianship account during the four-year period ending in 2005. As to the advances, since the issue of co-mingling of assets was not before the trial court when it reviewed the four partial accountings, its approval of the accountings did not constitute a determination that the advances consisted solely of appellant's own personal funds.

{¶27} As part of her argument concerning the funds derived from the transfer of Perry's remaining assets, appellant submits that, once the transfer took place in 2005, Perry was only allowed to have the sum of $1,500. Building upon this, she argues that, since the payments she made with the "transfer" funds were substantially greater than $1,500, the only logical conclusion is that she could not have been using guardianship funds to make those particular payments. Without commenting upon the merits of this

9

argument, this court would indicate that appellant's point would clearly be relevant to the issue of whether she was actually guilty of co-mingling of assets during that stage of the guardianship. Hence, if we were to address the point in the context of this appeal, we would essentially be allowing appellant to re-litigate the co-mingling issue when the point could have been raised in a direct appeal from the removal determination.

{¶28} As a final point, appellant again notes that, after she testified that all of the disputed payments were made from her personal accounts, no evidence was presented which contradicted her testimony. However, once it had been established in the case that she had engaged in the co-mingling of her assets with the guardianship assets, the magistrate and the trial court could justifiably conclude that appellant's general statement was not believable unless it was supported by more specific documentary evidence. A review of the trial transcript indicates that, although appellant introduced into evidence copies of some of the checks she issued, she never gave any evidence expressly showing the source of the underlying funds. Under such circumstances, it cannot be said that the magistrate or trial court abused its discretion in rejecting appellant's evidence as being insufficient to carry her burden of proof.

{¶29} Simply stated, in light of the prior finding in the case as to the propriety of appellant's acts as guardian for her husband, neither the magistrate nor the trial court were obligated to find her general testimony as to the source of the disputed payments credible. Accordingly, since the magistrate's finding on the controlling factual issue, i.e., whether the disputed payments were made from appellant's personal funds, was supported by the manifest weight of the evidence, each of her first three assignments lack merit.

{¶30} Under her fourth assignment, appellant has raised a separate issue as to the legal propriety of not allowing her to be reimbursed for the extra tax payments she was required to make for the 2005 fiscal year. She asserts that, as a result of the denial of her motion, she was obligated to pay 100% of the extra tax debt, notwithstanding the fact that a joint tax return was filed. Based upon this, appellant maintains that the trial court's decision was simply inequitable.

{¶31} As to the point, this court would indicate that appellant's entire argument is predicated upon the assumption that only her personal funds were used to pay the extra tax debt. Given our analysis under the first three assignments, this assumption is not appropriate; i.e., appellant's evidence was insufficient to show that guardianship funds were not used to pay the tax debts. Clearly, if appellant used her guardianship funds to pay the tax debts, there would be no equitable reason to reimburse her. Alternatively, it must also be noted that appellant never testified as to the exact reason why additional taxes had to be paid for 2005. In the absence of a proper explanation, a determination of the equities of the situation is not possible. Therefore, appellant's final assignment of error also lacks merit.

{¶32} Consistent with the foregoing analysis, each of appellant's four assignments are without merit. Accordingly, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Probate Division, is affirmed.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

11