LEWIS et al., Appellants,

v.

CELINA FINANCIAL CORPORATION et al., Appellees.

[Cite as *Lewis v. Celina Fin. Corp.* (1995), 101 Ohio App.3d 464.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–94–21.

Decided Feb. 28, 1995.

*Hatcher, Diller, Rice & Beebe* and *W. Edward Hatcher; Wechsler, Skirnick, Harwood, Halebiam & Feffer* and *Gary Weinstein,* for appellants.

*Taft, Stettinius & Hollister, L. Clifford Craig* and *Mark G. Kobasuk; Purdy, Lammers & Schiavone* and *Thomas D. Lammers,* for appellees.

Evans, Judge.

Appellants, plaintiff Harry Lewis and his counsel Stuart D. Wechsler, and the firm of Wechsler, Skirnick, Harwood, Halebiam & Feffer ("Wechsler Skirnick"), and W. Edward Hatcher and the firm of Hatcher, Diller, Rice & Beebe ("Hatcher Diller") appeal from a judgment of the Court of Common Pleas of Mercer County holding them jointly and severally liable for attorney fees imposed as a sanction for filing a frivolous lawsuit. For the reasons that follow, the judgment of the trial court is affirmed.

## I

The judgment of attorney fees stems from the appellants' unsuccessful attempt to certify a shareholder class action lawsuit against the Celina Financial Group ("Celina"). Celina, an Ohio corporation, with its principal office located in Celina, Ohio, was organized in 1965 by three mutual insurance companies—National Mutual Insurance Company, Celina Mutual Insurance Company, and Republic Mutual Insurance Company (the "Mutuals"). The Mutuals and Celina share common management and the Mutuals owned approximately fifty-five percent of Celina's Class A Common shares of stock before the tender offer at issue here was made.

On February 19, 1993, Celina announced in a press release a proposed tender offer in which the National Mutual Insurance Company ("National"), one of Celina's member mutual companies, would take Celina private by offering $5.80 per share for the seven hundred fifty thousand outstanding Class A common shares. The press release, published in the February 22, 1993, edition of the Wall Street Journal, indicated that Celina had exited many businesses—including reinsurance and data processing—making a holding company no longer necessary. According to Don W. Montgomery, Celina's chairman, the expense of being a public company was too high.

After reading about the "going private" transaction in the February 22, 1993, edition of the Wall Street Journal, the plaintiff, Harry Lewis, contacted his lawyer to authorize the filing of a lawsuit. On February 24, 1993, two days after Lewis read the announcement of the tender offer, Wechsler Skirnick, with Hatcher Diller as local counsel, filed a shareholder class action complaint, alleging claims of breach of fiduciary duty. W. Edward Hatcher signed the complaint naming Celina, its six directors, and National as the defendants ("appellees"). The complaint sought unspecified damages and injunctive relief to prevent the consummation of the proposed tender offer, which was scheduled to close on March 22, 1993. Lewis's complaint challenged both the structure and the fairness of the transaction. Specifically, Lewis alleged that the defendants

breached their fiduciary duties by enriching themselves at the expense of Celina's public shareholders, recommending the tender offer at an unfair price, failing to maximize shareholder value, and failing to avoid conflicts of interest, especially since Celina and National shared substantially identical officers and directors.

On May 19, 1993, Lewis moved for class certification. Both sides extensively briefed the motion, and in connection with the motion the defendants deposed Lewis on June 2, 1993. The trial court set a July 27, 1993 hearing date for the motion for class certification.

At the June 2, 1993 deposition, Lewis testified to the following: (1) his investigation prior to filing the lawsuit was limited to reading an announcement of the tender offer in the February 22, 1993 edition of the Wall Street Journal; (2) he did not read the sixty-one-page offer to purchase issued by Celina prior to filing suit; and (3) he did not read or review the complaint prior to filing suit.

In response to the tender offer, an overwhelming number of the outstanding shares owned by the minority shareholders—approximately eighty-six percent— were tendered. On June 24, 1993, the appellees announced that the cash-out merger of nontendering shareholders was to occur on July 2, 1993. On July 27, 1993—the hearing date set for the motion for class certification—Lewis, pursuant to Civ.R. 41(A)(1)(a), voluntarily dismissed his action.

■ On August 6, 1993, the appellees moved for attorney fees pursuant to Civ.R. 11, R.C. 2323.51, and the court's inherent power. The appellees asserted that Lewis's action was unwarranted under existing law and amounted to nothing more than a nuisance "strike suit."[1] In January 1994, the court conducted a two-day evidentiary hearing on the appellees' motion. During the hearing, both sides produced expert witnesses and submitted affidavits attesting to the complexity and viability of the litigation instituted by Lewis.

At the hearing and in the briefs submitted with the trial court, the appellees established that the Mutuals already possessed a majority of Celina's stock and voting power, and therefore could have bypassed the tender offer and immediately commenced a cash-out merger. The evidence demonstrated that the Mutuals did not gain control over Celina and the concomitant power to cause a merger by virtue of the tender offer; rather, Celina was already controlled by National and its affiliates. Therefore, the transaction was a tender offer for minority shares,

---

1. A "strike suit" is a class-action lawsuit by owners of securities who are "interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them." *Surowitz v. Hilton Hotels Corp.* (1966), 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807, 813. As noted recently in the New York Times, a strike suit is often a process of "high-stakes extortion." (New York Times, January 27, 1995, p. B16.)

which amounts to nothing more than a solicitation to purchase the remaining shares without requiring the minority shareholders to sell their shares should someone else offer them a higher price. Thus, Celina asserted that the Board of Directors had no duty to seek other purchasers, because this was not a contest for control.

The trial court's detailed, thoughtful, and well-reasoned decision contained the following relevant findings of fact and conclusions of law:

"1.  Neither plaintiff nor his attorneys have offered any evidence that any investigation was made into the facts alleged in the complaint or that either plaintiff or his counsel had a basis to believe that there were grounds to support the allegations of their complaint.

"2.  Neither plaintiff nor his counsel have offered any evidence that they had read the complaint prior to filing the same.

"3.  Neither plaintiff nor his counsel offered any explanation or evidence that the allegations contained in the complaint were warranted under existing law or that they could be supported by good faith argument for any extension, modification, or reversal of existing law.  Furthermore, it appears to this court that the allegations of the complaint are not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

"4.  The allegations of the various pleadings together with the deposition of plaintiff Lewis established *prima facie* that this suit was not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

In a judgment entry dated June 24, 1994, the trial court granted judgment against the plaintiff, Harry Lewis, and his counsel, Stuart D. Wechsler and the firm of Wechsler, Skirnick, Harwood, Halebiam & Feffer, and local counsel W. Edward Hatcher and the firm of Hatcher, Diller, Rice & Beebe, jointly and severally in the amount of $81,172.06, plus interest at the legal rate of interest from the date of the entry.

## II

From that judgment appellant W. Edward Hatcher ("Hatcher") asserts the following assignments of error for our review:

### Assignment of Error No. I

"The trial court erred in its findings of bad faith on the part of Attorney W. Edward Hatcher pursuant to Civ.R. 11."

## Assignment of Error No. II

"The trial court erred in sanctioning the law firm of Hatcher, Diller, Rice & Beebe in addition to the attorney who signed the pleadings, W. Edward Hatcher, pursuant to Civ.R. 11."

## Assignment of Error No. III

"The trial court erred in its finding of frivolous conduct on the part of Attorney W. Edward Hatcher pursuant to R.C. 2323.51."

## Assignment of Error No. IV

"The trial court erred in failing to consider W. Edward Hatcher's relative culpability and subjective intent in determining the appropriate level of sanctions pursuant to Civ.R. 11 and R.C. 2323.51."

As a threshold matter, we must determine whether the trial court was vested with jurisdiction to consider the appellees' motion for sanctions under Civ.R. 11, R.C. 2323.51, and the trial court's inherent power. While a voluntary dismissal under Civ.R. 41(A)(1) generally divests a court of jurisdiction, *State ex rel. Hunt v. Thompson* (1992), 63 Ohio St.3d 182, 586 N.E.2d 107; *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 397, 464 N.E.2d 142, 144, a hearing on sanctions is considered collateral to the underlying proceedings, and a trial court therefore retains jurisdiction for the limited purpose of applying Civ.R. 11 and R.C. 2323.51. See *Risk Insurers v. Lorenz Equip.* (1994), 69 Ohio St.3d 576, 580, 635 N.E.2d 14, 17–18, citing *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 396–397, 110 S.Ct. 2447, 2456–2457, 110 L.Ed.2d 359, 375–377 (Rule 11 sanctions are collateral to the action and may be considered by the trial court after an action is no longer pending); *Schwartz v. Gen. Acc. Ins. of Am.* (1993), 91 Ohio App.3d 603, 606, 632 N.E.2d 1379, 1381 (trial court does not lose jurisdiction to consider properly filed motions for sanctions pursuant to Civ.R. 11 and R.C. 2323.51 following plaintiff's voluntary dismissal of the complaint under Civ.R. 41). Accordingly, the trial court retained jurisdiction for the limited purpose of considering the appellees' motion for attorney fees as a sanction for engaging in frivolous conduct, as any other result would permit a party to voluntarily dismiss an action to evade an award of sanctions under Civ.R. 11 or R.C. 2323.51.

At the time of these proceedings, Civ.R. 11 (amended 7–1–94) governed the signing of pleadings and provided in part:

"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there

is good ground to support it; and that it is not interposed for delay. * * * For willful violation of this rule an attorney may be subjected to appropriate action. * * * "

Ohio's frivolous conduct statute, R.C. 2323.51, provides in part:

"(A)(1) 'Conduct' means filing a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action.

"(2) 'Frivolous conduct' means conduct of a party to a civil action or of his counsel of record that satisfies either of the following:

"(a) It obviously serves merely to harass or maliciously injure another party to the civil action;

"(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

"(B)(1) * * * [A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action, the court may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct.

" * * *

"(4) An award of reasonable attorney's fees pursuant to division (B)(1) of this section may be made against a party, his counsel of record, or both."

A decision to impose sanctions pursuant to Civ.R. 11, including an award of reasonable attorney fees, lies within the discretion of the trial court, and absent an abuse of discretion, such a decision will not be reversed. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966. Similarly, an appellate court will not reverse a trial court's decision to impose sanctions under R.C. 2323.51 absent an abuse of discretion. *Riley v. Langer* (1994), 95 Ohio App.3d 151, 159, 642 N.E.2d 1, 6. An abuse of discretion " 'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State ex rel. Motor Freight v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290, quoting *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 469, 113 N.E.2d 14, 19.

With these standards in mind, we turn to Hatcher's first assignment of error that the trial court erred in its finding of bad faith under Civ.R. 11. The trial court found that Hatcher's signing of the complaint constituted a willful violation of Civ.R. 11. In making this determination, the trial court noted that Lewis testified during his deposition that (1) he did not know Hatcher and thought he was an officer of Celina or a defendant and (2) he never spoke with

Hatcher before the complaint was filed. Additionally, Hatcher admitted at the April 22, 1993 pretrial conference, approximately two months after the complaint was filed, that he still had not read Celina's offer to purchase. Thus, Hatcher could not have reasonably believed that there was good ground to support the allegations in the complaint, thus exposing him to potential sanctions under Civ.R. 11. See *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 169–170, 561 N.E.2d 1001, 1004–1005.

■ Hatcher also asserts that his reliance on forwarding counsel relieves him of his obligations under Civ.R. 11. In *Val–Land v. Third Natl. Bank* (C.A.6, 1991), 937 F.2d 1110, 1117–1118, the United States Court of Appeals for the Sixth Circuit rejected the argument that local counsel can rely upon forwarding counsel in meeting his duties under Fed.R.Civ.P. 11. Citing *Pavelic & LeFlore v. Marvel Entertainment Group* (1989), 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438, the Sixth Circuit ruled that the individual signer of a document submitted to the federal courts has a personal nondelegable responsibility to determine that those matters comply with Fed.R.Civ.P. 11. The *Val–Land* court reasoned that "the text of the rule does not provide a safe harbor for lawyers who rely on the representations of outside counsel." *Val–Land*, 937 F.2d at 1117. Likewise, Ohio's version of Civ.R. 11 contains no "safe harbor" for attorneys relying on the representations of outside or forwarding counsel. We find the reasoning of the Sixth Circuit persuasive, and hold that Hatcher had a nondelegable responsibility to ensure that the requirements of Civ.R. 11 were fulfilled.

Hatcher's first assignment of error is overruled.

■ Hatcher's second assignment of error contends that the trial court erred in sanctioning the law firm of Hatcher, Diller, Rice & Beebe under Civ.R. 11. In *Pavelic & LeFlore v. Marvel Entertainment Group, supra*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438, the United States Supreme Court held that Fed. R.Civ.P. 11 does not authorize the court to impose a sanction against the law firm of the individual attorney who signed the motion, pleading, or paper; rather, only the individual signer is liable for sanctions under Fed.R.Civ.P. 11. In *Riley v. Langer* (1994), 95 Ohio App.3d 151, 162–163, 642 N.E.2d 1, 7–8, the Court of Appeals for Hamilton County applied the *Pavelic* decision in interpreting Ohio's Civ.R. 11, and held that only the attorney who signs the pleading in his individual capacity can be sanctioned under Civ.R. 11.

However, while the Hatcher Diller firm may not be sanctioned under Civ.R. 11, the trial court predicated its award of attorney fees under R.C. 2323.51, as well as Civ.R. 11 and its inherent power. Therefore, as counsel of record, Hatcher Diller remains liable for attorney fees under R.C. 2323.51. See *Riley*, 95 Ohio App.3d

at 163, 642 N.E.2d at 8. Consequently, Hatcher's second assignment of error is overruled.

Hatcher's third assignment of error contends that the trial court erred in its finding of frivolous conduct on the part of Hatcher pursuant to R.C. 2323.51. Under R.C. 2323.51, frivolous conduct is defined in objective terms. *Ceol v. Zion Indus. Inc.* (1992), 81 Ohio App.3d 286, 291, 610 N.E.2d 1076, 1079. A counsel's failure to adequately investigate a claim can constitute frivolous conduct under the statute. *Stephens v. Crestview Cadillac, Inc.* (1989), 64 Ohio App.3d 129, 132–133, 580 N.E.2d 842, 844–845. During his deposition, Lewis admitted that he (1) never read the complaint; (2) never spoke with Hatcher before the complaint was filed; and (3) never read the offer to purchase. Thus, there is no evidence that Hatcher attempted to verify with the plaintiff the accuracy or truthfulness of the allegations contained in the complaint.

Furthermore, Lewis's deposition testimony refutes many material allegations contained in the complaint. In particular, Lewis's deposition testimony reflects a basic ignorance of the following: (1) the disclosure provisions contained in the offer to purchase, including the disclosure of interlocking directorates; (2) the fact that the board of directors established a minimum condition to the tender offer, so that the offer, and therefore any subsequent merger, could not proceed without the approval by a majority of Celina's minority shareholders; and (3) the fact that the transaction was approved by Celina's disinterested director. When a plaintiff's deposition testimony refutes every material allegation in the complaint filed by his attorney, as is the case here, a trial court does not abuse its discretion in finding that the plaintiff's attorney engaged in frivolous conduct. *Newman v. Al Castrucci Ford Sales, Inc.*, 54 Ohio App.3d at 169–170, 561 N.E.2d at 1004–1005.

Hatcher's third assignment of error is overruled.

Hatcher's fourth assignment of error alleges that the trial court erred in not considering his culpability and subjective intent. First, subjective intent is not a requirement for imposing sanctions under R.C. 2323.51. See *Ceol v. Zion Indus. Inc.*, 81 Ohio App.3d at 291, 610 N.E.2d at 1079 (holding that frivolous conduct is defined in objective terms under R.C. 2323.51). Second, there is nothing in either R.C. 2323.51 or Civ.R. 11 which requires a trial court to consider the culpability of the sanctioned party in determining the amount of the sanctions. Finally, the trial court in this case considered the culpability of the participants involved with the litigation, and then made a decision to hold the plaintiff and his counsel "jointly and severally liable." Such a decision is within the discretion of the trial court. See *In re TCI, Ltd.* (C.A.7, 1985), 769 F.2d 441, 446.

Hatcher's fourth assignment of error is overruled.

Appellants Harry Lewis and Stuart D. Wechsler ("appellants") assert the following assignments of error for our review:

## Assignment of Error No. I

"The trial court erred in finding Appellants guilty of 'frivolous conduct' under R.C. 2323.51 since the complaint was warranted under existing law or was supported by a good faith argument for an extension, modification or reversal of existing law."

## Assignment of Error No. II

"The trial court erred in sanctioning Attorney Wechsler and his firm under Civ.R. 11, particularly considering that Wechsler did not sign the complaint."

## TWO–TIER TRANSACTION

The appellants' first assignment of error asserts that the complaint stated "classic claims for breach of fiduciary duty" against the directors who structured a coercive two-tiered going private transaction designed to unfairly squeeze out the minority shareholders.[2] However, the Mutuals already had a majority of Celina's stock and voting power, and therefore could have bypassed the tender offer and commenced a cash-out merger (a merger transaction in which the shareholders of the disappearing company receive cash for their shares). Thus, they have no continuing economic interest either in the old company or the new company which succeeds it. Additionally, the price offered in the tender offer and the subsequent cash-out merger was the same—$5.80 per share, which by definition cannot be coercive. See *A. Copeland Enterprises, Inc. v. Guste* (W.D.Tex.1989), 706 F.Supp. 1283, 1286, fn. 3. Therefore, the appellants had no basis for this claim.

## INTERLOCKING DIRECTORATES

The appellants refer to the directors of Celina as "self-dealing" and "conflicted." Although there were interlocking directorates, the fact of interlock-

---

**2.** A two-tier transaction is a tender offer at a higher price for approximately fifty percent of the stock accompanied by an announcement by the bidder that it intends to accomplish a merger immediately thereafter to eliminate the minority interest. See Solomon, Schwartz, & Bauman, Corporations: Law and Policy (1988) 1064. The concern with a coercive two-tiered bid is that the first tier is paid in cash and the second tier is paid in "junk bonds" (a high yield, sometimes high risk, bond that is rated below investment grade). Thus, shareholders tender their shares because they fear that if they do not they will be left with low value junk bonds. See *A. Copeland Enterprises, Inc. v. Guste* (W.D.Tex.1989), 706 F.Supp. 1283, 1286, fn. 3.

ing directorates was fully disclosed in the offer to purchase. Moreover, Celina voluntarily imposed a minimum condition of approval by a majority of Celina's minority shareholders before National could accept the offer. Additionally, there was one independent director who did approve the transaction. Thus, even if this was a "forced transaction," as the appellants maintain, it was approved by an independent director with full disclosure and by eighty-six percent of the minority shareholders with full disclosure. Thus, the interlocking directorates that the appellants refer to did not create a breach of fiduciary duty in this case.

## REVLON RULE

The appellants also assert that the appellees did not "maximize shareholder value" by offering to sell Celina to see what others might pay. The appellants' contention is unwarranted under Ohio law. In a corporate takeover, "the directors are not held to a duty to the shareholders to obtain, like an auctioneer, the highest price possible for their shares of the corporation. The law of the state of Delaware to that effect as pronounced in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.* (Del.1986), 506 A.2d 173, is not applicable in Ohio." *Stepak v. Schey* (1990), 51 Ohio St.3d 8, 14, 553 N.E.2d 1072, 1078 (Holmes, J., concurring). Furthermore, it is well established that a majority shareholder is under no obligation to offer any particular price in a tender offer for the minority-held stock. See *In re Ocean Drilling & Exploration Co. Shareholders Litigation* (Del.Ch.1991), 1991 WL 70028. Thus, the appellants' claim has no basis in Ohio law.

## R.C. 1701.60(A)(1)(a)

The appellants cite *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 17 OBR 512, 479 N.E.2d 315, for the proposition that under R.C. 1701.60(A)(1)(a), if there were common officers or directors on both sides of a transaction, the burden shifts to the officers and directors to prove that the transaction was fair to the corporation. We reject that argument.

R.C. 1701.60 provides that a contract or transaction between the corporation and one or more of its directors shall not be void or voidable if (1) it is approved by a majority of disinterested directors or committee of directors, or (2) it is approved by a majority of disinterested shareholders at a meeting held for such a purpose, or (3) the contract or transaction is fair to the corporation as of the time it is authorized or approved.

R.C. 1701.60 applies only to transactions between the corporation and its officers or directors, or the corporation and another entity in which those officers or directors have an interest. The transaction here was between National and the shareholders of Celina. By definition, a tender offer is an offer made directly

to the shareholders of Celina and the corporation is not a party. Thus, R.C. 1701.60 does not apply to this transaction.

## NONDISCLOSURE CLAIM

The appellants also assert that the offer to purchase did not render the complaint unwarranted under Ohio law, insisting that the gravamen of the complaint was "breach of fiduciary duty of loyalty" and "the source of defendant's breach, as alleged in the complaint, lay in their failure to disclose all pertinent information concerning the fairness of the offering." However, the appellants cannot claim nondisclosure given Lewis's admission that he never read the offer to purchase prior to filing suit. Despite Lewis's admission that he never read the offer to purchase, he asserted during the course of his deposition that he studied the announcement of the proposed transaction in the February 22, 1993 edition of the Wall Street Journal and came to the good faith conclusion that the transaction was an unfair "freezeout" (a buyout of the minority shares by the dominant shareholder, usually for cash or a fixed income security, where the dominant shareholder has the votes to cause the transaction to occur).

The Wall Street Journal article in question is approximately two square inches and contains only a rudimentary explanation of the transaction. We do not feel that the article provides a basis for filing a class-action lawsuit alleging that the directors and officers breached their fiduciary duties by enriching themselves at the expense of the shareholders. See *Garr v. U.S. Healthcare, Inc.* (C.A. 3, 1994), 22 F.3d 1274, 1281 (reliance on publicly available information in the financial press is not necessarily sufficient to withstand a motion for sanctions). Thus, we find the appellants' nondisclosure claim unwarranted under Ohio law.

Finding no abuse of discretion, we conclude that the trial court did not err in determining that the appellants' conduct was frivolous pursuant to R.C. 2323.51, because the complaint was not warranted under existing law or supported by a good faith argument for an extension, modification, or reversal of existing law.

The appellants' first assignment of error is overruled.

The appellants' second assignment of error posits that the trial court erred in sanctioning attorney Wechsler and his firm under Civ.R. 11. While attorney Wechsler and his firm may not be sanctioned under Civ.R. 11, *Pavelic*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438, we note again that the trial court predicated its award of attorney fees upon R.C. 2323.51, Civ.R. 11, and its inherent power. R.C. 2323.51(B)(4) authorizes a trial court to award attorney fees against a party, his counsel of record, or both. The firm of Wechsler, Skirnick, Harwood, Halebian & Feffer is listed on the original complaint as counsel. Thus, attorney Wechsler and Wechsler Skirnick remain liable for attorney fees awarded pursu-

ant to the statute. See *Riley v. Langer*, 95 Ohio App.3d at 163, 642 N.E.2d at 8. As noted above, we find no abuse of discretion on the part of the trial court in awarding attorney fees pursuant to the statute.

The appellants' second assignment of error is overruled.

### III

Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW and HADLEY, JJ., concur.