JOURNAL ENTRY AND OPINION
{¶ 1} In these consolidated appeals, appellant Western Reserve Area Agency on Aging ("WRAAA") claims Probate Judge John E. Corrigan erred when, without a hearing, he denied its motion for sanctions and attorney fees against LuAnn Mitchell.[1]
Appellant Mitchell, in a separate proceeding, contends that the judge erred in denying her application for guardian and attorneys fees.[2] We reverse both judgments and remand
 {¶ 2} From the record we glean the following: In 1999, Mitchell, an attorney, was appointed as guardian of the estate of the then ninety-year-old Bertha Washington.[3] Because the ward wanted to stay in her home, she was enrolled in WRAAA's PASSPORT program which provides Medicaid services and benefits for homebound seniors, but not to residents of rehabilitation centers.
 {¶ 3} When Washington was taken to a rehabilitation center in December of 1999, WRAAA sent a notice of disenrollment and advised that she was no longer eligible for PASSPORT benefits.[4] Mitchell filed an administrative appeal with the State Hearing Board based on this disenrollment, and the hearing officer determined that her ward had been lawfully terminated from the program. In his opinion, however, he reminded WRAAA that it was nonetheless required to continue providing benefits during the pendency of the appeal,[5] i.e., from the date of Washington's anticipated release from the rehabilitation facility through the date his decision was issued.[6]
 {¶ 4} In April of 2000, Mitchell requested another hearing to determine her ward's eligibility for reimbursement of expenses incurred during the appeal period and, among other things, that the PASSPORT benefits should have been completely reinstated. The hearing officer's decision required WRAAA to reimburse Washington for the costs she had paid for care, etc., under her prescribed service plan during the appeal period, but stated no specific amount of reimbursement.
 {¶ 5} WRAAA then requested that Mitchell provide it with specific information about the persons or agencies that provided PASSPORT-like services to her ward and the amounts paid on the ward's behalf to help it determine the amount of Washington's reimbursement, but Mitchell did not respond.
 {¶ 6} In April of 2001, Mitchell moved the probate court to enforce the hearing board's judgment against WRAAA. WRAAA, claiming lack of jurisdiction, moved for dismissal. It's motion was granted in January of 2002 without objection.
 {¶ 7} One month later, Mitchell filed a declaratory judgment action in probate court claiming WRAAA should reimburse her ward $31,527 in expenses because of the termination of her PASSPORT benefits during the appeal period, plus fees and costs. Claiming lack of jurisdiction and res judicata, WRAAA moved to dismiss this action and noticed Mitchell for her deposition duces tecum to obtain the receipts, cancelled checks, and other documents necessary to support the claimed reimbursement.
 {¶ 8} In June of 2002, while the declaratory judgment action was pending, Mitchell filed an emergency proceeding in the General Division of the Common Pleas Court, assigned to the special docket of Administrative Judge Richard McMonagle, Case No. 075524, to compel WRAAA to reimburse the same expenses that were the subject of her pending declaratory judgment action. A hearing was scheduled two days later and the case was dismissed.[7]
 {¶ 9} Mitchell then dismissed the declaratory judgment action and WRAAA, alleging that Mitchell knew the probate court had no jurisdiction over the declaratory judgment action, moved for attorney fees and sanctions under R.C. 2323.51 and Civ. R. 11, and continued to reschedule her deposition. It was able, however, to obtain Washington's cancelled checks and bank records. In May of 2003, the judge, on his own motion, sought to remove Mitchell as Washington's guardian.
 {¶ 10} In 2000, Mitchell had filed a collection action for Washington's estate,[8] obtained a judgment and garnished the defendant's wages in the full amount of that judgment.[9] She filed an application for guardian and attorney fees incurred in that collection action in May of 2003.[10]
 {¶ 11} She finally appeared for her deposition in September and, shortly thereafter, was removed as guardian of Washington's estate. In October, and without a hearing, the judge denied WRAAA's motion for sanctions. He also ordered that Mitchell's application for fees be denied.
 {¶ 12} It is from these orders WRAAA and Mitchell each appeal. The various assignments of error are set forth in appendix A to this opinion. Mitchell did not file an appellee's brief.
 HEARING {¶ 13} WRAAA claims it was error to deny their motion for attorney fees and sanctions without first conducting a hearing. We agree. It had moved for sanctions under Civ.R. 11 and R.C.2323.51 against Mitchell after she dismissed the declaratory judgment action under Civ.R. 41(A). We note that, although a voluntary dismissal under Civ.R. 41(A)(1) generally divests a court of jurisdiction, a judge may consider collateral issues not related to the merits of the action.[11] "[A] hearing on sanctions is considered collateral to the underlying proceedings, and a trial court therefore retains jurisdiction for the limited purpose of applying Civ.R. 11 and R.C. 2323.51."[12]
 {¶ 14} In Pisani v. Pisani,[13] this court was asked whether a motion for sanctions was properly denied without first conducting a hearing, and we held that a moving party must first demonstrate actual merit to the claim before a judge has a duty to conduct a hearing on a motion for sanctions. A determination that a motion for sanctions lacks merit is reviewed under an abuse of discretion standard.[14]
 {¶ 15} In its motion for sanctions, WRAAA claimed that Mitchell's actions were frivolous and calculated merely to harass or injure the agency because there was neither a legal or factual basis for her claims.
 {¶ 16} Civ.R. 11 governs the signing of pleadings and provides in pertinent part that:
{¶ 17} "The signature of an attorney or pro se partyconstitutes a certificate by the attorney or party that theattorney or party has read the document; that to the best of theattorney's or party's knowledge, information and belief there isgood ground to support it; and that it is not interposed fordelay. If a document is not signed or is signed with intent todefeat the purpose of this rule, it may be stricken as sham andfalse and the action may proceed as though the document had notbeen served. For a willful violation of this rule, an attorney orpro se party, upon motion of a party or upon the court's ownmotion, may be subjected to appropriate action, including anaward to the opposing party of expenses and reasonable attorneyfees incurred in bringing any motion under this rule."
 {¶ 18} In determining whether an attorney's or party's conduct violates Civ.R. 11, a judge should consider whether the attorney or party signing the document: (1) has read the pleading, (2) harbors good grounds to support the pleading to the best of his or her knowledge, information and belief, and (3) did not file the pleading for purposes of delay.[15] If any one of these requirements is not satisfied, he must next determine whether the violation by the attorney or party was "willful" rather than merely negligent.[16] If the conduct was willful, the judge may award to the opposing party expenses and attorney fees and he has broad discretion in determining what, if any, sanction to administer.[17]
 {¶ 19} R.C. 2323.51 defines frivolous conduct as:
 {¶ 20} "(a) Conduct of an inmate or other party to a civilaction, of an inmate who has filed an appeal of the typedescribed in division (A)(1)(b) of this section, or of theinmate's or other party's counsel of record that satisfies eitherof the following: (i) It obviously serves merely to harass ormaliciously injure another party to the civil action orappeal. (ii) It is not warranted under existing law and cannot besupported by a good faith argument for an extension,modification, or reversal of existing law."[18]
 {¶ 21} The record reflects that, in an attempt to enforce the ruling of the State Hearing Board, Mitchell filed a petition in probate court seeking reimbursement of her ward's PASSPORT-related expenses. Because the court lacked jurisdiction, it was initially dismissed because of the magistrate's report that stated in part:
{¶ 22} "The probate court, as any other court, has theauthority to enforce its orders. However, the guardian is seekingrelief from the probate court to enforce an order granted by astate hearing officer. The order the guardian seeks enforcementof has not been issued by the probate court. Probate court is acourt of limited jurisdiction and as a result of the limitedjurisdiction, it is without the authority to grant the reliefsought by the guardian."[19]
 {¶ 23} No objections were filed to the report, the judge adopted it, and no appeal followed.
 {¶ 24} Despite this dismissal, approximately one month later, Mitchell filed a second action in probate court, seeking to enforce the judgment of the State Hearing Board. WRAAA then filed numerous motions in response, including a motion to dismiss citing the prior dismissal for lack of jurisdiction.
 {¶ 25} While these motions were pending and in an attempt to gather support for the over $30,000 in claimed, yet unsupported reimbursement, WRAAA tried many times to obtain Mitchell's deposition. Four months into the second case, she filed an emergency proceeding in the common pleas court seeking the same relief prayed for in the two earlier probate cases and, two days later and on the morning of the hearing, the case was dismissed.[20]
 {¶ 26} The same day the emergency action was dismissed, Mitchell filed a notice of dismissal in the second probate action, stating that, "the reason for the dismissal is because this court has determined that it does not have the authority or jurisdiction to enforce the two administrative State Hearing decisions . . .," the precise determination that was made one month prior to her filing the second probate case.
 {¶ 27} The record is replete with evidence that WRAAA's motion for sanctions had merit, therefore, it was an abuse of discretion to deny its request for a hearing. This first assignment of error has merit.
 R.C. 2323.51 AND CIV.R. 11 {¶ 28} In two assignments of error, WRAAA claims it was error to deny its motion for attorney fees and sanctions for violations of R.C. 2323.51 and Civ.R. 11. Because of our finding merit in the first assignment of error, the second and third assignments of error are moot.[21]
 MITCHELL'S MOTION FOR ATTORNEY FEES AND COSTS. {¶ 29} After collection proceedings that resulted in approximately a $4500 benefit to Washington's estate, Mitchell applied for $5,000 in guardian fees and attorney fees. She claims the judge's assertion that her efforts were not necessary and did not benefit the ward was incorrect and that he wrongfully denied her application.
 {¶ 30} R.C. 2111.14 outlines a guardian's duties in the administration of a ward's estate, and includes reasonable attorney fees as part of the expenses of administration.[22] However, any legal expense incurred by the guardian must directly benefit the estate or the ward in order to charge the estate.[23]
 {¶ 31} The probate judge has discretionary power when authorizing payment of attorney fees. Whether these fees and costs are necessary or beneficial to the ward's interest is within the exercise of his discretion.[24]
 {¶ 32} Attached to her application for fees, Mitchell submitted an itemized statement totaling $16,795.99 in fees for time that she claims to have expended to obtain and satisfy Washington's judgment against Patricia Anderson, and requested $5000 in fees. We cannot say her efforts did not financially benefit the estate and the judge's outright denial of any fees in spite of a benefit to the estate prevented a subsequent reasonable request for fees. Although an award of attorney fees which exceeds the monetary benefit to the estate is per se unreasonable, this does not provide justification for denying any fee award and Mitchell should have been given the opportunity to make a subsequent application for a more reasonable fee. This assignment of error has merit.
Judgments reversed and remanded.
 APPENDIX A: CASE NO. 83837 {¶ 33} "I. The trial court committed reversible error infailing to conduct a hearing upon appellant's motion forattorneys fees pursuant to 2323.51.
 {¶ 34} II. The trial court committed reversible error indenying appellant's motion for attorney's fees pursuant to R.C.2323.51.
 {¶ 35} The trial court committed reversible error in failingto find, as a matter of law, that appellant was entitled to anaward of attorneys fees because Luann Mitchell violated R.C.2323.51 and Civil Rule 11."
 CASE NO. 83877 {¶ 36} "I. The trial court erred in failing to award feesand/or costs to Attorney L. Mitchell and abused its discretion bydetermining that the recoveries in excess of $4,575.00 were "notnecessary and did not benefit the ward."
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., and Rocco, J., concur.
[1] Case No. 2002 ADV 0059296.
[2] Case No. 1999 GDN 14181 B.
[3] Ms. Washington died on November 6, 2003.
[4] OAC Rule 5101:3-31-03(G).
[5] OAC 5101:6-4-01.
[6] Ms. Washington's anticipated release from the rehabilitation center was February 5, 2000, and the hearing officer's decision was entered on March 28, 2000.
[7] Although a claim has been made that Mitchell filed a notice of dismissal on the morning of the emergency hearing, we note that neither the special docket nor the record reflect this notice, and the case was dismissed on the judge's order.
[8] L. Mitchell, Guardian for the Estate of Bertha L.Washington, an incompetent person v. Patricia Anderson, Probate Court Case No. 2000 ADV 0037282.
[9] 2002 CVH 21914.
[10] 1999 GDN 14181 B.
[11] State ex rel. Corn v. Russo, 90 Ohio St.3d 551, 556-557, 2001-Ohio-15,740 N.E.2d 265, 270; Industrial Risk Insurers v.Lorenz Equipment Co., 69 Ohio St.3d 576, 580, 1994-Ohio-442,635 N.E.2d 14, 17-18.
[12] Baker v. USS/Kobe Steel Co., (Jan. 5, 2000), Lorain App. No. 98CA007151, quoting Lewis v. Celina Fin. Corp. (1995),101 Ohio App.3d 464, 470, 655 N.E.2d 1333, 1337.
[13] (1995), 101 Ohio App.3d 83, 654 N.E.2d 1355.
[14] Cook Paving Construction Co. Inc. v. Treeline Inc.
(October 18, 2001), Cuyahoga App. No. 77408, 2001-Ohio-4235;Pisani v. Pisani, supra.
[15] Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286,291, 610 N.E.2d 1076.
[16] Id., citing Haubeil Sons Asphalt Materials, Inc. v.Brewer Brewer Sons, Inc. (1989), 57 Ohio App.3d 22, 23,565 N.E.2d 1278.
[17] Ceol, supra at 290, citing Stevens v. Kiraly (1985),24 Ohio App.3d 211, 213-214, 494 N.E.2d 1160.
[18] R.C. 2323.51(A)(2).
[19] Report of Magistrate, Case No. 1998 GDN 14181B, filed December 14, 2001.
[20] The special docket reflects that the case was dismissed on 6-26-02, however, WRAAA claims the dismissal came only after Mitchell filed a motion to dismiss on the morning of the hearing.
[21] App.R. 12(c).
[22] R.C. 2113.36; In re Wonderly (1984), 10 Ohio St.3d 40,42, 461 N.E.2d 879, 881.
[23] Wonderly, supra at 42, 461 N.E.2d at 881.
[24] In re Guardianship of Escola (1987), 41 Ohio App.3d 42,47, 534 N.E.2d 866, 872.