JOURNAL ENTRY AND OPINION
{¶ 1} Luann Mitchell, the former guardian of Bertha Washington, appeals from the order of the trial court that awarded Western Reserve Area Agency on Aging ("WRAAA") $42,815.79 in attorney fees and expenses as a sanctions against Mitchell, and which reduced Mitchell's claim for attorney fees from the guardianship estate. For the reasons set forth below, we reverse and remand the award as to WRAAA and affirm as to Mitchell's claim for attorney fees.
 {¶ 2} The facts of this matter have been set forth inMitchell v. Reserve Area Agency on Aging, 2004-Ohio-4353
("Mitchell I"), as follows:
 {¶ 3} "In 1999, Mitchell, an attorney, was appointed as guardian of the estate of the then ninety-year-old Bertha Washington [who subsequently died in 2003]. Because the ward wanted to stay in her home, she was enrolled in WRAAA's PASSPORT program which provides Medicaid services and benefits for homebound seniors, but not to residents of rehabilitation centers.
 {¶ 4} "When Washington was taken to a rehabilitation center in December of 1999, WRAAA sent a notice of disenrollment and advised that she was no longer eligible for PASSPORT benefits [pursuant to OAC Rule 5101:3-31-03(G).] Mitchell filed an administrative appeal with the State Hearing Board based on this disenrollment, and the hearing officer determined that her ward had been lawfully terminated from the program. In his opinion, however, he reminded WRAAA that it was nonetheless required to continue providing benefits during the pendency of the appeal [OAC 5101:6-4-01]. i.e., from the date of Washington's anticipated release from the rehabilitation facility [February 5, 2000] through the date his decision was issued [March 28, 2000.]
 {¶ 5} "In April of 2000, Mitchell requested another hearing to determine her ward's eligibility for reimbursement of expenses incurred during the appeal period and, among other things, that the PASSPORT benefits should have been completely reinstated. The hearing officer's decision required WRAAA to reimburse Washington for the costs she had paid for care, etc., under her prescribed service plan during the appeal period, but stated no specific amount of reimbursement." See Mitchell I.
 {¶ 6} The record further reflects that in April of 2001, Mitchell sought to enforce the hearing board's judgment against WRAAA in the probate court. The matter was dismissed for lack of jurisdiction in January of 2002.
 {¶ 7} In February 2002, Mitchell filed a second action in the probate court seeking reimbursement from WRAAA for Washington during the appeal period, plus fees and costs. Mitchell also sought attorney fees in connection with the collection of a debt owed to Washington. WRAAA moved to dismiss on the basis of res judicata and lack of jurisdiction and also sought discovery from Mitchell concerning her claim for reimbursement following the termination of the PASSPORT benefits.
 {¶ 8} In June of 2002, Mitchell filed a separate action for reimbursement from WRAAA in the General Division of the Common Pleas Court but this case was dismissed two days later.
 {¶ 9} On June 26, 2002, Mitchell filed a notice of dismissal in the second probate action, noting that the probate court did not have "authority or jurisdiction to enforce two administrative hearing decisions[.]"
 {¶ 10} On July 16, 2002, WRAAA moved for attorney fees and sanctions under R.C. 2323.51 and Civ. R. 11 in the probate proceedings. In relevant part, WRAAA asserted:
 {¶ 11} "Ms. Mitchell's commencement and prosecution of this action since February 2002 has been frivolous and calculated to harass or maliciously injure WRAAA * * * Plaintiff's resistence to discovery and Magistrate Brown's order of May 9 [2002] only served to run up Defendant's attorneys' fees in further violation of the statute.
 {¶ 12} "* * *
 {¶ 13} "Plaintiff dismissed [the second probate action] by notice pursuant to Civ.R. 41(A). In her notice she acknowledged this action was being dismissed because she knew there was no `authority or jurisdiction' in this Probate Court to determine her action for Declaratory Relief."
 {¶ 14} Counsel for WRAAA also asserted that Mitchell admitted in the general proceedings that she knew that the probate court had no jurisdiction over the second action she had filed there. He also questioned various receipts that Mitchell had submitted in support of her claim for reimbursement, and noted that one item was for a computer and Mitchell's ward was incompetent.
 {¶ 15} Counsel for WRAAA continued to work on the case throughout the remainder of 2002 and most of 2003. He eventually deposed her in September 2003, see Mitchell I, over one year after the case had been dismissed.
 {¶ 16} The court denied the motion and WRAAA appealed to this court. In a decision dated August 19, 2004, this court determined that the probate court abused its discretion in denying WRAAA's motion for sanctions without holding a hearing, and reversed and remanded. In so concluding, this court noted that, despite the previous dismissal of the first probate action for lack of jurisdiction, Mitchell filed a similar action in probate court approximately one month later. The court also noted that during the pendency of the second action, WRAAA unsuccessfully attempted to depose Mitchell.
 {¶ 17} On February 11, 2005, following the remand by this court, the attorney for WRAAA submitted an itemized fee statement that indicated that he had worked on the case virtually every single week from the June 2002 dismissal of Mitchell's second probate action through October 2003. The requested fees, at $170 per hour, which had totaled approximately $14,684.42 in attorneys fees and expenses at the time the action was dismissed, had now totaled $38,208.79, and totaled $42,815.79 through the end of the frivolous conduct hearing. He testified that he reviewed the factors set forth in DR 2-106 and he determined that they were met; he presented no evidence as to the factors and did not link the billed items directly to Mitchell's second four-month long lawsuit.
 {¶ 18} The magistrate recommended that the court find that Mitchell's conduct was frivolous and that WRAAA be awarded attorney fees. The magistrate noted that, following the state administrative hearing as to reimbursement, Mitchell could have appealed to the court of common pleas pursuant to R.C. 5101.35. The magistrate also noted that Mitchell was seeking to injure WRAAA by requiring payment for unprovable expenses, avoided discovery and was evasive under oath. The magistrate determined, however, that the hourly rate charged by WRAAA's counsel was not reasonable and that a more reasonable rate was $100 per hour for a total of $21,700 plus $4,104.79 in costs. The magistrate also recommended that Mitchell receive $1,525 for collecting the $4,575 judgment in favor of Bertha Washington.
 {¶ 19} WRAAA objected to the magistrate's reduction of the hourly amount, arguing that taxpayer dollars were used to defend against Mitchell's conduct and that her conduct was outrageous. The court found the objections well-taken and awarded the increased hourly rate, for a total of $36,890 plus expenses of $4,104.79.
 {¶ 20} Mitchell now appeals and assigns eight errors for our review.
 {¶ 21} Mitchell's first, second, and fourth assignments of error are interrelated and state:
 {¶ 22} "Mitchell as guardian of the person and estate for decedent, Mrs. Bertha Washington, cannot be held personally liable for defendant's claims for sanctions requesting attorney fees because guardians cannot be held personally liable for any debt of the ward."
 {¶ 23} "As guardian of Mrs. Bertha L. Washington, Ms. L. Mitchell can sue in her own name and still not be held personally liable for the debts of the decedent, Mrs. Bertha L. Washington."
 {¶ 24} "Guardian L. Mitchell cannot be held liable for frivolous claims under Ohio Revised Code Section 2323.51 because she is not a party to this litigation."
 {¶ 25} Within these assignment of error, Mitchell notes that R.C. 2111.51(B) provides that a guardian is not personally liable for any debt of the ward. She also notes that she did not initiate any of the actions in her personal capacity, but did so only as representative of Washington.
 {¶ 26} Civ.R. 11 requires that an attorney sign all pleadings, motions, or other documents filed with the court. This signature "constitutes a certificate by the attorney * * * that the attorney has 1) read the document; 2) that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and 3) that it is not interposed for delay."
 {¶ 27} R.C. 2323.51(A)(2)(a) defines frivolous conduct as conduct of, inter alia, a party's counsel of record, which:
 {¶ 28} "(i) * * * obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 {¶ 29} "(ii) * * * is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 {¶ 30} "(iii) * * * consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."
 {¶ 31} Thus, such sanctions may be imposed upon counsel of record. In such instances they are the debts of counsel and not of the party and R.C. 2111.51 is therefore inapplicable. AccordMaster v. Chalko (May 11, 2000), Cuyahoga App. No. 75973.
 {¶ 32} Finally, we note that this court has already determined, in Mitchell I, that Mitchell was subject to sanctions under Civ.R. 11 and R.C. 2323.51 for her conduct in this matter. This decision remains the law of that case as to this issue for all subsequent proceedings in the case at both the trial and reviewing levels. See Nolan v. Nolan (1984),11 Ohio St.3d 1, 3, 462 N.E.2d 410.
 {¶ 33} The first and second assignments of error are without merit.
 {¶ 34} Mitchell's third assignment of error states:
 {¶ 35} "As guardian, it was the duty of Ms. L. Mitchell to bring suit for decedent Mrs. Bertha L. Washington because it was in the best interest of Mrs. Bertha L. Washington."
 {¶ 36} Within this assignment of error, Mitchell notes that the WRAAA has still not provided reimbursement for Washington's care during the appeal period, despite being ordered to do so in the state administrative hearings and that she has simply attempted to enforce that ruling.
 {¶ 37} Pursuant to O.A.C. 5101:1 et seq., individuals can be directly reimbursed for medical expenses where, inter alia, the individual provides proper documentation. As the magistrate noted, R.C. 5101.35 provides for appeals to the court of common pleas. Mitchell did not follow this procedure, and instead filed an action for enforcement in the probate court. Following the dismissal of that action for lack of jurisdiction, Mitchell filed an identical action one month later. Accordingly, this court cannot agree that Mitchell was acting within the best interest of Washington in this matter.
 {¶ 38} The third assignment of error is without merit.
 {¶ 39} Mitchell's fifth assignment of error states:
 {¶ 40} "The claim for Rule 11 sanctions must be barred and deemed a moot point because the actions and decisions of the lower courts to which gives rise to this appeal never discussed and/or addressed Rule 11 sanctions. Furthermore, said lower courts solely based its decision on sanctions using only Ohio Revised Code Section 2323.51."
 {¶ 41} Mitchell next claims that neither WRAAA nor the court referenced Civ.R. 11 in any of the prior decisions, so this rule does not support an award of sanctions. Mitchell's claim lacks support in the record as the July 16, 2002, and the decision inMitchell I clearly reference the rule. Accordingly, this claim is without merit. Cf. L.A.D., Inc. v. Bd. Of Commrs. (1981),67 Ohio St.2d 384, 388, 423 N.E.2d 1109.
 {¶ 42} Mitchell's sixth assignment of error states:
 {¶ 43} "Defendant Western Reserve Area Agency on Aging[`s] assertion that they never received the expense report in order for it to pay what was owed to Mrs. Bertha Washington and what was deemed frivolous by defendant and its counsel is erroneous, thereby negating its assertion of frivolity."
 {¶ 44} Mitchell asserts that she did not behave in a frivolous fashion with regard to discovery. Again, this issue was addressed in Mitchell I, wherein this court held that WRAAA's motion for sanction had merit. Accordingly, this determination is the law of the case and will not be revisited within this appeal. See Nolan v. Nolan.
 {¶ 45} Mitchell's seventh assignment or error states:
 {¶ 46} "The evidence of Defendant's attorney fees is extreme and tainted with fees no reasonable court would allow because much of what the defendant is asking is outside the scope of this litigation."
 {¶ 47} Appellate review of a trial court's decision to impose sanctions pursuant to Civ.R. 11 and R.C. 2323.51, and upon whom to impose such sanction, is on an abuse of discretion standard.Burrell v. Kassicieh (1998), 128 Ohio App.3d 226,714 N.E.2d 442. Absent an abuse of discretion, if sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed. Brady v. Hickman Lowder Co., Cuyahoga App. Nos. 83041 83989, 2004-Ohio-4745.
 {¶ 48} Civ.R. 11 authorizes an award of expenses and reasonable attorney fees to an opposing party where an attorney signs a pleading, motion, or other document while aware that the document lacks good ground to support it. Moss v. Bush,105 Ohio St.3d 458, 2005-Ohio-2419, 828 N.E.2d 994.
 {¶ 49} Similarly, R.C. 2323.51 allows a court to award court costs, reasonable attorney fees, and expenses to any party who has been adversely affected by frivolous conduct. See R.C.2323.51(B)(1).
 {¶ 50} "Where a determination has been made that an entire lawsuit, a certain claim or claims, or a defense or defenses asserted in a civil action were frivolous, the party seeking R.C.2323.51 attorney fees must affirmatively demonstrate that he or she incurred additional attorney fees as a direct, identifiable result of defending the frivolous conduct in particular."Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 54,673 N.E.2d 628.
 {¶ 51} "Attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility," which concerns the reasonableness of attorney fees. Sup.R. 71(A). See In reEstate of Murray, supra. This provision sets forth the following factors which are to be considered: (1) time and labor, novelty of issues raised and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) result obtained; and (4) experience, reputation and ability of counsel. DR 2-106(B); Swanson v. Swanson (1976),48 Ohio App.2d 85, 355 N.E.2d 894.
 {¶ 52} "The burden," however, "is upon the attorneys to introduce into the record sufficient evidence of the services performed and the reasonable value of such services." In reVerbeck's Estate (1962), 173 Ohio St. 557, 559, 184 N.E.2d 384;Donese v. Donese, 2000 Ohio App. LEXIS 4462 (Sept. 29, 2000), Montgomery App. No. 2000-CA-17. "A simple multiplication of hours by a minimum hourly fee is not by itself a proper method to determine such charges." Roux v. Lonardo (Aug. 30, 1991), Trumbull App. No. 89-T-4302. A lawyer may testify as to his hourly fee and the number of hours expended; however, determining fees solely on time expended is deficient, as a matter of law, because it is only one of the factors to be considered. SeeHumphrey v. Humphrey, Ashtabula App. No. 2000-A-0092, 2002-Ohio-3121. Finally, a trial court is precluded from making the required factual determination when the party, through his or her attorney, provides no evidence to the court showing the nature of the services rendered, the difficulty of the services performed, or any other information required by Swanson. McCoyv. McCoy (1993), 91 Ohio App.3d 570, 583-84, 632 N.E.2d 1358.
 {¶ 53} In this case, we find major problems with the attorney fee award.
 {¶ 54} First, we find it remarkable that the attorney fees ballooned from $14,684.42 in attorneys fees and expenses at the time the action was dismissed, to $38,208.79, prior to the frivolous conduct hearing and again swelled to $42,815.79 through the end of the frivolous conduct hearing. This amount is more than $10,000 more than Mitchell sought in reimbursement.
 {¶ 55} Second, although Mitchell's second probate action was pending for only four months, Counsel for WRAAA sought and was awarded attorney fees and expenses throughout the remainder of 2002 and most of 2003. Counsel insisted that he needed to depose Mitchell after she dismissed the second probate action and indicated that he "reasonably suspects and believes that this action was commenced by Plaintiff Mitchell without factual basis * * *. Only a sworn deposition of Ms. Mitchell will reveal whether she ever had any factual basis for her reimbursement claim." See Post Judgment Motion for Attorney Fees.
 {¶ 56} We note that following a voluntary dismissal, the trial court "retains jurisdiction for the limited purpose of applying Civ.R. 11 and R.C. 2323.51." Lewis v. Celina Fin.Corp. (1995), 101 Ohio App.3d 464, 470, 655 N.E.2d 1333.
 {¶ 57} Civ.R. 11 provides for the filing of a motion for sanctions. If there is an "arguable basis" for the motion, then the court must conduct a hearing. Woodworth v. Huntington Natl.Bank (Dec. 7, 1995), Franklin App. No. 95APE02-219. The rule then authorizes the court to take "appropriate action." We do not interpret the rule to authorize a party to continue discovery in support of a motion for fees and expenses under this rule, with the case languishing all the while and attorney fees continuing to escalate.
 {¶ 58} Similarly, R.C. 2323.51(B) provides for the filing of a motion for an award of court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal but such motion must be filed "not more than thirty days after the entry of final judgment." R.C.2323.51(B). In this matter, counsel for WRAAA filed the motion for sanctions within the 30 day time limit, but indicated that the motion was dependent upon additional information which counsel had not yet obtained. However, either the motion was complete and properly filed within the thirty day deadline or it was not complete and was thus out of rule. There is simply no authority for the continuation of proceedings as was done in this matter and certainly no authority for continuing the proceedings for over a year, all the while incurring additional fees. Cf.Soler v. Evans, St. Clair Kelsey, 94 Ohio St.3d 432,2002-Ohio-1246, 763 N.E.2d 1169 ("The plain meaning of the statute provides a means for an immediate judicial determination and a speedy sanctioning of such abuse. * * * [T]he General Assembly manifested its intent that there be a cutoff time for this sanction to be imposed.").
 {¶ 59} Significantly, as this court noted in Mitchell I,
the frivolous conduct arose in connection with the fact that Mitchell refiled it in probate court following a prior dismissal for lack of jurisdiction, and while WRAA's motion to dismiss was pending, i.e., prior to the voluntary dismissal, WRAAA unsuccessfully tried many times to obtain Mitchell's deposition. Frivolous conduct was clearly established within the four months that this matter was pending. Additional information from Mitchell was therefore not required in this regard, as these matters were clear from the record which existed in July 2002. We can see no basis for counsel for WRAAA continuing to bill due to frivolous conduct of Mitchell in connection with the second probate case throughout 2002 and most of 2003.
 {¶ 60} Moreover, WRAAA's itemization of fees lists a variety of matters such as participating in the court's proceedings to have Mitchell removed as Washington's guardian. It is doubtful that such fees were incurred as a direct, identifiable result of defending the second probate matter.
 {¶ 61} Third, the hourly rate submitted by counsel for WRAAA does not appear reasonable in that the itemized fee bill lists numerous items which could have easily been handled by support staff at a lower rate. See Milam v. Milam (October 19, 1994,) Greene App. No. 94-CA-23:
 {¶ 62} "Support staff can provide routine information to, or obtain routine information from, clients by telephone at less expense, and there may be telephone contact between client and attorney that does not require the attorney's professional expertise, notwithstanding the use of the attorney's time."
 {¶ 63} Finally, we note that although the attorney for WRAAA testified that he considered the factors of DR 2-106 and that he was of the opinion that the requested fees were reasonable, there was no evidence to establish any of the factors set forth in DR 2-106 and no evidence that the itemized fees were a direct, identifiable result of the frivolous lawsuit which was pending for approximately four months. As noted previously, the itemization fees in connection with counsel's decision to appear in the proceedings to have Mitchell removed as Washington's guardian.
 {¶ 64} In accordance with all of the foregoing, the trial court erred as a matter of law in awarding counsel for WRAAA $42,815.79 in attorney fees.
 {¶ 65} This assignment of error is well-taken.
 {¶ 66} Mitchell's eighth assignments or error states:
 {¶ 67} "The amount of the award of attorney's fees to plaintiff guardian L. Mitchell by the lower courts was extremely low and therefore not reasonable."
 {¶ 68} In Mitchell I, this court noted that Mitchell instituted collection proceedings on Washington's behalf. These proceedings resulted in a benefit of approximately $4,500 to the estate, and Washington applied for $5,000 in guardian fees and attorney fees. This court found the requested fee per se unreasonable but concluded that the lower court erred in denying Mitchell payment for her efforts and should have allowed her to "make a subsequent application for a more reasonable fee." Id.
 {¶ 69} Following our remand, the judgment of the probate court awarded Mitchell $1,525. The record indicates that Washington's assets had all been expended, that Mitchell had full knowledge of Washington's assets and income and that the reduction from $5,000 to $1,525 was reasonable in light of the $4,575 benefit to the estate. Accordingly, we find no abuse of discretion in connection with this fee award.
 {¶ 70} In accordance with all of the foregoing, the judgment of the trial court which awarded "WRAAA" $42,815.79 in attorney fees and expenses as a sanctions against Mitchell is reversed, the trial court's award of $1,525 to Mitchell for attorney fees from the guardianship estate is affirmed, and the matter is remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., Concurs.
 Michael J. Corrigan, J., Concurs in Judgment Only.