CLEVELAND BAR ASSOCIATION *v.* MITCHELL.

[Cite as *Cleveland Bar Assn. v. Mitchell,*
118 Ohio St.3d 98, 2008-Ohio-1822.]

(No. 2007–1581—Submitted December 12, 2007—Decided April 23, 2008.)

_____

**Per Curiam.**

{¶ 1} Respondent, Luann Mitchell of Cleveland, Ohio, Attorney Registration No. 0007205, was admitted to the practice of law in Ohio in 1983.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for 18 months, staying the last 12 months on conditions, based on findings that she tried to obtain Medicaid reimbursement for a client's unsubstantiated health-care expenses, pursued frivolous legal actions, and refused to provide her office or residence address as required for attorney registration. We agree that respondent committed profes-

sional misconduct as found by the board and that an 18–month suspension, with 12 months stayed on conditions to improve her methods of practice, is appropriate.

{¶ 3} Relator, Cleveland Bar Association, charged respondent in a three-count complaint with multiple violations of the Code of Professional Responsibility and with disobeying the registration requirements of Gov.Bar R. VI. A panel of the board heard the case, making findings of misconduct and recommending the 18–month suspension and conditional 12–month stay. The board adopted the panel's findings and recommended sanction, adding as conditions of the stay that respondent comply with an underlying court order to pay sanctions and also properly register as an attorney.

{¶ 4} Respondent has filed three objections but developed only two of her arguments enough to warrant disposition. Objections II and III challenge the validity of sanctions ordered against respondent by the Cuyahoga County Probate Court in litigation underlying the board's report. There, the probate court determined that respondent had attempted to thwart through frivolous legal action a private company's efforts to verify and pay expenses for which respondent had claimed Medicaid reimbursement. Respondent cites no authority for this collateral attack on the probate court proceedings. The objections are therefore overruled.

## Misconduct

### Counts I and II—Respondent Violated Disciplinary Rules Prohibiting Dishonesty and Frivolous Lawsuits.

{¶ 5} Respondent claims to oversee the care of senior citizens on a volunteer basis. She described the assistance she provides this way:

{¶ 6} "I keep a stable of 23 seniors that I'm able to assist, and that's based on the number of adult day workers and home health aides that I have available to me. I would never take more than the 23, because I could not provide them with quality. So I kept them then, and I still have them now. And when they die off, I replace them; and I normally keep a stable of about 23 of them."

{¶ 7} The Cuyahoga County Probate Court appointed respondent as guardian of the person and estate of Bertha L. Washington. As of 1999, Washington was over 90 years old and, as a housebound Medicaid recipient, enrolled in Ohio's PASSPORT program. According to the Western Reserve Area Agency on Aging ("WRAAA"), a private company then responsible for administering the program, PASSPORT regulations afforded Washington health-care benefits only until she became confined to a nursing home or rehabilitation facility.

{¶ 8} Washington was hospitalized during October 1999. In early November of that year, she was transferred to a rehabilitation facility, with her discharge

anticipated in early February 2000. In mid-December 1999, WRAAA terminated Washington's enrollment in PASSPORT as a result of her rehabilitative confinement.

### Respondent Wins Reimbursement for Her Client

{¶ 9} Respondent appealed WRAAA's decision to disenroll Washington to the then Ohio Department of Human Services ("ODHS"). A state hearing officer determined that the WRAAA had lawfully terminated Washington from the program, but cautioned WRAAA that once a PASSPORT recipient had filed a timely appeal, regulations precluded WRAAA from terminating benefits until the state hearing officer's decision. On further appeal, ODHS affirmed the finding of lawful termination.

{¶ 10} Respondent then initiated a new administrative appeal to obtain the reimbursement to which the hearing officer had implied her client was entitled. She also asserted that her client had been refused reenrollment in PASSPORT. In June 2000, another hearing officer upheld the refusal of reenrollment but ordered WRAAA to reimburse Washington at "the previous level" for the health-care expenses she paid from February 5, 2000, the date she was discharged from rehabilitative care, until March 28, 2000, the date of the first hearing officer's decision.

### The Legal Proceedings Begin

{¶ 11} WRAAA accepted the finding that it had improperly terminated services to Washington for February through March 2000, and beginning in July 2000, WRAAA attempted to comply with the reimbursement order. WRAAA first wrote to respondent, asking her to document the providers and cost of services for which Washington had paid during the relevant period. Respondent did not reply.

{¶ 12} Respondent would later repeatedly ignore WRAAA's attempts to verify her client's health-care expenses and impede the reimbursement process by filing a series of legal actions. She filed with the probate court in April 2001 an "Ex–Parte Motion to Enforce Judgment against [WRAAA]," claiming $31,527 in reimbursable expenses. She did not initially serve WRAAA with notice of this filing. On WRAAA's motion, that court ultimately dismissed respondent's action in January 2002, citing lack of jurisdiction. Respondent did not appeal.

{¶ 13} In May 2001, an attorney for WRAAA wrote to respondent, again asking her to verify Washington's health-care providers and the cost of their services. He explained that WRAAA needed to determine whether the services were like those of PASSPORT and within the scope of Washington's service plan of care. Respondent did not reply.

{¶ 14} In August 2001, the probate court attempted to facilitate Washington's reimbursement. During one proceeding, respondent told a magistrate that she had sent information sufficient to verify Washington's expenses to WRAAA's attorney, an assertion that WRAAA attorney Dale A. Nowak denied. The magistrate instructed respondent to produce the requested information.

{¶ 15} Several days after this hearing, Nowak wrote to respondent, asking her to "redouble" efforts to document Washington's reimbursable health-care expenses. In mid-November 2001, the parties appeared again before the magistrate, and respondent produced a one-page document listing expenditures of $29,577. She gave no receipts or other records to corroborate the expenses, however, or even the names of the providers.

{¶ 16} Nowak advised the magistrate that respondent's list of expenditures did not satisfy state reimbursement standards. To make sure, the magistrate told WRAAA to submit respondent's list of expenditures to the Ohio Department of Aging, the agency responsible for approving reimbursement. As Nowak had anticipated, that agency rejected the list as insufficient. Nowak wrote two more letters that November, asking respondent to substantiate Washington's health-care expenditures. She did not.

*Respondent's Second Lawsuit*

{¶ 17} In February 2002, soon after the dismissal of her "ex parte" proceeding, respondent filed a complaint for declaratory judgment in the probate court, again claiming $31,527 in reimbursable expenses on Washington's behalf. WRAAA moved to dismiss for reasons again including the probate court's limited jurisdiction.

{¶ 18} Nowak, on WRAAA's behalf, then tried to verify Washington's reimbursable health-care expenses through discovery. He sent notice to respondent of her scheduled deposition duces tecum and moved to compel this discovery when she did not appear. A probate court magistrate heard WRAAA's motion in April 2002, but respondent also did not appear for that proceeding. Respondent later claimed lack of notice for both the deposition and the hearing.

{¶ 19} WRAAA sent a second notice of deposition duces tecum to respondent, but she failed to appear. Instead, respondent inexplicably moved to quash the notice as if it were a subpoena. A third deposition date was canceled while the parties awaited a ruling on the motion to quash.

{¶ 20} In May 2002, the magistrate overruled respondent's motion to quash, ordering her to appear and be deposed on a date in May 2002. Respondent still did not appear, and WRAAA asked the probate court to find her in contempt. In June 2002, the magistrate once more ordered respondent to appear for her deposition and to substantiate Washington's health-care expenses.

*Respondent's Third Lawsuit*

{¶ 21} But rather than appear as instructed, respondent filed at the end of June 2002 an emergency proceeding in the General Division of the Cuyahoga County Common Pleas Court, seeking a summary order reducing Washington's claim to a judgment against WRAAA for over $31,000. Two days later, respondent voluntarily dismissed the pending declaratory-judgment action for reasons she would later be unable to consistently explain to the hearing panel. On the day of the dismissal, the common pleas court heard evidence in the emergency proceeding but promptly dismissed the case after learning that WRAAA had been trying for nearly two years to verify the expenditures in dispute.

*WRAAA Seeks Attorney Fees and Sanctions; and Respondent's Fourth Lawsuit*

{¶ 22} In July 2002, after respondent dismissed her declaratory-judgment action, WRAAA file a motion in the probate court to award attorney fees and sanctions pursuant to Civ.R. 11 and R.C. 2323.51. Protracted proceedings, including two appeals, ensued. See *Mitchell v. W. Res. Agency,* Cuyahoga App. No. 86708, 2006-Ohio-2475, 2006 WL 1360800, and *Mitchell v. W. Res. Area Agency on Aging,* Cuyahoga App. Nos. 83837 and 83877, 2004-Ohio-4353, 2004 WL 1853156. The probate court ultimately awarded what respondent estimated at the panel hearing to be $28,000 in sanctions. The sanctions remain unpaid, perhaps because respondent is continuing to contest the award.

{¶ 23} Pursuant to the motion for fees and sanctions, WRAAA resumed trying to depose respondent in July 2002. She did not appear, filing instead a fourth action against WRAAA in common pleas court. In March 2003, the court also dismissed that proceeding.

{¶ 24} In August 2002, the successor to ODHS, Ohio Job and Family Services ("OJFS"), admonished respondent that by failing to substantiate Washington's health-care expenses in accordance with state standards, she had prevented WRAAA from making the ordered reimbursement. As a result, OJFS had concluded that WRAAA was in compliance with the state hearing officer's decision. OJFS afterward scheduled a final hearing, on respondent's request, to allow her to verify the expenses in dispute, but she did not take advantage of that proceeding.

{¶ 25} Meanwhile, WRAAA filed another motion to compel discovery in probate court. The magistrate granted the motion in December 2002, and in overruling respondent's objections, the judge afterward ordered respondent to appear for her deposition on March 25, 2003. Respondent finally appeared at the appointed date and time, but the parties had to continue the proceeding to allow respondent to retrieve her records.

{¶ 26} Respondent thereafter failed to arrange a date to resume her deposition and produce the requested records, and WRAAA again moved the probate court to find her in contempt. Respondent did not appear at the hearing on that motion. She finally appeared and resumed her deposition in early September 2003.

*Respondent's Fifth Lawsuit*

{¶ 27} In late September 2003, respondent filed a mandamus action to compel the Ohio Department of Aging to repay Washington more than $31,632. The court of appeals dismissed the action. Respondent told the hearing panel that she could not remember the reason for the dismissal.

{¶ 28} In October 2003, the probate court sua sponte removed respondent as guardian of Washington's estate, allowing her to remain as guardian of the person. Washington died on November 6, 2003.

*Respondent's Defense to the Charges of Dishonesty and Frivolous Filings*

{¶ 29} Respondent could not justify her litigious refusal to substantiate the expenses for which she claimed reimbursement. Of the documents that are in the record, none established whether asserted expenditures were supplied by PASSPORT-approved providers. Some records identified costs without even naming the provider. To the extent that the records contained invoices, many large purchases—hardware and software for a computer monitoring system, construction for structural accommodations, and a furnace—were not accompanied by any receipt or canceled check showing payment. As a result, the total of receipts and canceled checks that coincide with the relevant reimbursement period do not come close to substantiating either the $29,000 or $31,000 figures that respondent intermittently claimed.

{¶ 30} As just one example, canceled checks from Washington's guardianship account document at most $1,015 in costs of home care, errands, meal preparation, and housekeeping for Washington from February 5, 2000, through March 28, 2000. Cash receipts exist for $2,022 more in these services, for a total of $3,037. Respondent, however, demanded reimbursement for $7,682 in such services for the same period.

{¶ 31} Similarly suspect was respondent's unsubstantiated claim that she had paid health-care workers and contractors with counter checks rather than checks printed for debits from the guardianship bank account. And her explanation of how some of these creditors agreed not to cash checks for an undetermined period, possibly until she obtained money to pay them from WRAAA, is dubious at best. Supposedly, a few of the home-care workers and contractors had returned checks to respondent on her request, yet she did not produce even one such check for the panel's review.

{¶ 32} We also doubt the validity of respondent's cash receipts. Health-care workers testified to having negotiated some of respondent's counter checks, but not one of these canceled checks was presented as evidence. Moreover, the receipts indicated that one witness received $1,522 in checks or cash, supposedly for doing Washington's housework and meals during February and March 2000. A receipt for a $512 payment to that witness, however, specified that she provided the service in February and March of 2002, a discrepancy for which no one offered a credible explanation.

{¶ 33} Respondent's account of the underlying events defied rational belief and suffered from gaping lapses in corroborative proof. For claims such as that she had provided the records she had to WRAAA's lawyers whenever requested, respondent did not offer as much as a cover letter. Moreover, she persistently overanswered questions during the hearing with circuitous unresponsiveness, confounding the panel members. The panel and board did not credit respondent's defense for these reasons, and neither do we.

{¶ 34} Respondent deceptively claimed reimbursement for expenditures that she could not substantiate and thereby violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (prohibiting conduct that is prejudicial to the administration of justice), and (6) (prohibiting other conduct that adversely reflects on the lawyer's fitness to practice law). She then tried to conceal the discrepancy through illegitimate lawsuits and falsified evidence in violation of DR 7–102(A)(1) (prohibiting a lawyer from taking legal action that the lawyer knows or should know will serve merely to harass or maliciously injure another), (2) (prohibiting a lawyer from knowingly advancing a claim or defense that is unwarranted under existing law and not supported by good-faith argument for an extension, modification, or reversal of existing law), (4) (prohibiting a lawyer from knowingly using false evidence), (5) (prohibiting a lawyer from knowingly making a false statement of law or fact), and (6) (prohibiting a lawyer from knowingly creating or preserving false evidence). We therefore adopt the board's findings of misconduct as to Counts I and II.

*Count III—Respondent Violated Disciplinary Rules and Gov.Bar R. VI by Refusing to Provide Her Current Address for Attorney Registration.*

{¶ 35} Gov.Bar R. VI(1)(D) requires that lawyers keep this court's Attorney Registration Section apprised of the attorney's current residence and office address. Respondent has provided only a post office box number for her attorney registration record. She also refused to disclose her residence or office address to the panel, saying she did not want to accept service of process where she lived. Respondent thereby violated Gov.Bar R. VI(1)(D) and DR 1–102(A)(5) and (6).

Sanction

{¶ 36} Rarely are we called upon to sanction a lawyer for advancing frivolous lawsuits. In *Disciplinary Counsel v. Pollock*, 100 Ohio St.3d 280, 2003-Ohio-5752, 798 N.E.2d 594, however, we suspended a lawyer for one year, staying the last six months on conditions of no further misconduct, because he had exceeded bounds of zealous advocacy. That lawyer filed more than 20 lawsuits arising out of the same series of transactions, advancing meritless and repetitious claims merely to harass those whom he considered his client's oppressors.

{¶ 37} Respondent exhibited a similar overzealousness, violating her duty to aid the legal system in the fair and efficient administration of justice. Unlike the lawyer in *Pollock*, however, respondent also violated DR 1–102(A)(4) by engaging in a deceptive course of conduct. Because we routinely impose a period of actual suspension for such misconduct, *Disciplinary Counsel v. Beeler*, 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44; *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, paragraph one of the syllabus, the infraction warrants an enhanced sanction here.

{¶ 38} But we must also weigh aggravating and mitigating factors in making our disposition. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Mitigating factors include that respondent has no prior disciplinary record and has a reputation for dedication to the elderly under her care. See BCGD Proc.Reg. 10(B)(2)(a) and (e). Indeed, respondent expressed much passion during these proceedings for protecting the interests of disabled and senior citizens, which may explain why no evidence suggests that she profited personally from her zealous advocacy on Washington's behalf. And by all accounts, Washington's health and living conditions improved dramatically under respondent's supervision.

{¶ 39} Weighing against the mitigating factors is that respondent engaged in a pattern of misconduct and multiple offenses. See BCGD Proc.Reg. 10(B)(1)(c) and (d). Moreover, though respondent professed her good intentions, her recalcitrance in acknowledging wrongdoing is as disturbing to us as it was to the panel and board. Respondent remains indignant that WRAAA did not pay Washington's expenses based on little more than her say-so and has promised to continue any other mission she undertakes with equal zeal. Finally, respondent still inexplicably will not provide an address to complete her attorney registration, and she has not paid the sanction ordered by the probate court.

{¶ 40} In adopting the panel's findings, the board aptly observed:

{¶ 41} "We recognize that Mrs. Washington, respondent's client and ward, seems not to have been harmed; in fact, she seemingly thrived under respondent's care.

{¶ 42} "However, we have found that respondent's actions otherwise were pervasive, and that respondent has no remorse. She has multiple violations in addition to the DR 1–102(A)(4) violation. Respondent has deviated from truth, logic, and perhaps reality, but certainly from the standards required of an attorney."

{¶ 43} We agree and adopt the sanction recommended by the board. Respondent is therefore suspended from the practice of law in Ohio for 18 months; however, the last 12 months of the suspension are stayed on the conditions that she (1) commit no further misconduct, (2) complete during the period of actual suspension three hours of continuing legal education in ethics and professionalism and three hours in probate and guardianship law, in addition to requirements of Gov.Bar R. X, and (3) complete a 12–month monitored probation period pursuant to Gov.Bar R. V(9) to commence upon her reinstatement. As further conditions of the stay, respondent shall (1) comply with Gov.Bar R. VI(1)(D) within 30 days of our order and (2) pay any sanctions ordered by the probate court during the initial six months of suspension or within 90 days of a probate court final order. If respondent fails to comply with the terms of the stay or probation, the stay will be lifted, and respondent shall serve the entire 18–month suspension.

{¶ 44} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

---

Gallagher Sharp, Sheila A. McKeon, and Timothy J. Fitzgerald, for relator.
Luann Mitchell, pro se.